The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Gary L. WIEDEMER, Defendant–
Appellant.

No. 92SA231.

Supreme Court of Colorado,
En Banc.

May 10, 1993.
Rehearing Denied June 7, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Laurie A. Booras, Asst. Atty. Gen., Robert M. Petrusak, Asst. Atty. Gen., Denver, for plaintiff-appellee.

David F. Vela, State Public Defender, Thomas R. Williamson, Deputy State Public Defender, Denver, for defendant-appellant.

Justice LOHR delivered the Opinion of the Court.

The defendant, Gary L. Wiedemer, appeals from an order of the Jefferson County District Court denying his motion under Crim.P. 35(c) to vacate a judgment of conviction entered against him in 1964 for felony theft of auto parts. The district court based its decision on a determination that the motion was not filed within the period prescribed by section 16–5–402, 8A C.R.S. (1986), which limits the time for commencing collateral attacks on criminal convictions. On appeal the defendant challenges the applicability and constitutional sufficiency of that statute. He also asserts that if section· 16–5–402 does apply to his motion, the district court erred in concluding that he failed to show "justifiable excuse or excusable neglect" for his late filing so as to except him from the time limitations of the statute by its own terms. We conclude that section 16–5–402 applies to the defendant's Crim.P. 35(c) motion and that the statute is constitutionally sufficient. We reverse the district court's order, however, and remand the case to that court for further proceedings to determine whether the defendant's delay in filing his motion resulted from justifiable excuse or excusable neglect under the standards that we set forth in this opinion.

## I

In 1964 the defendant was charged in Jefferson County District Court with the crime of felony theft of auto parts. *See* § 13–13–5, 2 C.R.S. (1953).[1] He pleaded guilty and was granted probation, but when he violated the terms of the probation order in 1965 the district court revoked his probation and sentenced him to imprisonment for a term of three to five years. Later that same year the defendant moved to vacate both this sentence and the underlying judgment of conviction, asserting that before he entered his plea of guilty, the judge had advised him that the maximum term of imprisonment that could be imposed was six months. The district court vacated the sentence and ordered the defendant released for time served but did not vacate either the conviction or the plea upon which it was based.[2]

On September 11, 1991, the defendant filed a motion in Jefferson County District Court under Crim.P. 35(c) to set aside the conviction and guilty plea, alleging that the plea had been taken in violation of standards prescribed by the United States and Colorado Constitutions and by the Colorado Rules of Criminal Procedure. The prosecution moved to strike the defendant's motion on the basis that it was a collateral attack barred by the time limitations of section 16–5–402, 8A C.R.S. (1986). Without holding a hearing, the district court granted the prosecution's motion to strike and found "finality" with regard to the conviction.

The defendant appeals.[3] He asserts first that section 16–5–402 should not be construed to apply to a postconviction motion to set aside a judgment of conviction under Crim.P. 35(c) because such an interpretation would violate statutory construction principles and would bring the statute into conflict with constitutional guarantees of the rights to habeas corpus, due process, and equal protection of the laws and would also violate the constitutional doctrine of separation of powers. The defendant argues further that if section 16–5–402 does apply, the district court erred in finding that his failure to seek relief within the applicable time period did not result from "circumstances amounting to justifiable excuse or excusable neglect" so as to qualify his motion for the exception to the statutory time bar set forth in section 16–5–402(2)(d). Finally, the defendant asserts on the merits that his plea of guilty to the charge of felony theft of auto parts was invalid because he was not informed of the consequences of his plea or of the elements of the offense and because he received ineffective assistance of counsel. We first address the statutory construction and constitutional issues and conclude that Crim.P. 35(c) motions are subject to the time bar of section 16–5–402. *See infra* part II. We then set forth the standards that a court must apply in order to determine whether a defendant's failure to seek relief within the prescribed time period resulted from circumstances amounting to justifiable excuse or excusable neglect. *See* part III. Finally, we remand the case to the district court for further proceedings to apply these standards.

## II

■ The statutory time bar that the district court relied upon in striking the defen-

---

1. Although there was a 1963 version of this statute, the charging document refers to the 1953 edition of the Colorado Revised Statutes. Except for the statutes' headings, the 1953 and 1963 versions are identical.

2. The incomplete record before us suggests that at the providency hearing in 1964 the district court advised the defendant of the possible penalties for conviction of misdemeanor theft of auto parts instead of the possible penalties for felony theft of auto parts and that this error went unnoticed throughout the proceedings that led to the defendant's plea of guilty and conviction for the latter offense.

3. This appeal was originally filed with the Colorado Court of Appeals but was transferred to this court because the constitutionality of a statute is in question. *See* § 13–4–102(1)(b), 6A C.R.S. (1987). § 13–4–102(1)(b) was subsequently amended, effective July 1, 1992, to narrow the applicable exception to the court of appeals' jurisdiction to cases in which a statute has been declared unconstitutional. Ch. 56, sec. 1, § 13–4–102(1)(b), 1992 Colo. Sess. Laws 271, 271. Our jurisdiction in this case is governed by the former statute.

dant's motion to set aside his conviction and plea of guilty is contained in section 16–5–402. The statute imposes time limitations for commencing collateral attacks on judgments of conviction. The defendant asserts that a motion filed under Crim.P. 35(c) to set aside a conviction is a direct rather than a collateral attack, and is therefore not subject to the statutory bar. In support of this proposed statutory construction, the defendant advances the following arguments: (1) the plain language of section 16–5–402, reinforced by the rule of lenity, does not encompass attacks on convictions that are brought under Crim.P. 35(c); (2) exclusion of Crim.P. 35(c) challenges from the scope of section 16–5–402 is necessary to harmonize that statute and section 18–1–410, 8B C.R.S. (1986); (3) a Crim.P. 35(c) challenge to a conviction differs from a collateral attack as to both the nature of the challenge and the consequence of the remedy; (4) it is unnecessary to construe section 16–5–402 to include Crim.P. 35(c) challenges in order to preclude untimely or repetitious postconviction challenges to judgments of conviction; and (5) if section 16–5–402 is construed to include Crim.P. 35(c) challenges, it will violate constitutional protections of the rights to habeas corpus, due process, and equal protection of the laws as well as the doctrine of separation of powers. We address these contentions in the order stated.

A

Section 16–5–402(1) provides that subject to exceptions set forth in subsection (2), "no person who has been convicted under a criminal statute of this or any other state of the United States shall collaterally attack the validity of that conviction unless such attack is commenced within the applicable time period ... following the date of said conviction." [4] A defendant has three years in which he may attack any felony conviction other than a conviction for a class 1 felony, eighteen months for challenging a misdemeanor conviction, and six

months for challenging a conviction for a petty offense. § 16–5–402(1). Presumably because of the severity of sentences imposed for class 1 felonies, the legislature determined that attacks on judgments of conviction for such offenses should never be time barred. *Id.* The defendant argues that a Crim.P. 35(c) motion is a direct attack on a conviction, not a collateral attack, and therefore the statute does not apply to bar his claims. In support of this contention he first raises arguments based on the plain meaning of the statute and the rule of lenity.

In construing a statute our central purpose is to ascertain and give effect to the intent of the legislature. *People v. Schuett*, 833 P.2d 44, 47 (Colo.1992); *People v. Terry*, 791 P.2d 374, 376 (Colo.1990). In so doing, we look first to the language of the statute itself. *Schuett*, 833 P.2d at 47; *Robles v. People*, 811 P.2d 804, 806 (Colo.1991). When that language is clear so that the intent can be discerned with reasonable certainty, there is no need to resort to other rules of statutory interpretation. *Robles*, 811 P.2d at 806. Furthermore, we must avoid constructions that would defeat an obvious purpose of a statute when that purpose is shown clearly on the statute's face. *Terry*, 791 P.2d at 376.

The legislature explained its intent in enacting section 16–5–402 in subsection (2) of that statute where it listed the exceptions to the time limitations specified in subsection (1):

In recognition of the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders, the only exceptions to the time limitations specified in subsection (1) of this section shall be:

(a) A case in which the court entering judgment of conviction did not have jurisdiction over the subject matter of the alleged offense;

---

**4.** The date of conviction for purposes of triggering the statute's time limitations is the date on which a court enters a judgment of conviction pursuant to Crim.P. 32(c). Because it would not affect the result in the case we need not consider whether the applicable limitations period would be tolled during the pendency of a defendant's appeal.

(b) A case in which the court entering judgment of conviction did not have jurisdiction over the person of the defendant;

(c) Where the court hearing the collateral attack finds by a preponderance of the evidence that the failure to seek relief within the applicable time period was caused by an adjudication of incompetence or by commitment of the defendant to an institution for treatment as a mentally ill person; or

(d) Where the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect.

The overall purpose, therefore, was to make a judgment of conviction unassailable, subject to constitutional constraints, after the expiration of a reasonable period of time for attacking its validity. *See People v. Fagerholm,* 768 P.2d 689, 692 (Colo. 1989) (the primary object of section 16–5–402 was "to reduce as far as constitutionally permissible the availability of post-conviction review of stale convictions"). The legislature's specific goals in limiting attacks on criminal convictions were twofold. First, the statute's time limitations were established to give finality to judgments of conviction so that statutory provisions directed at repeat offenders, former offenders, and habitual offenders would not be frustrated by tardy efforts to set aside prior convictions. Second, the statute expresses the additional and independent goal of avoiding the "difficulties attending the litigation of stale claims," a concern addressed to all forms of attack on criminal convictions that have matured to procedural finality.

The defendant, however, contends that under the plain meaning of the language of section 16–5–402 a Crim.P. 35(c) motion is a

direct attack, not a collateral attack, and therefore is not subject to the statute's time bar. We acknowledge that the fact that a Crim.P. 35(c) motion is filed in the same court that entered the judgment of conviction and that its purpose is to vacate that judgment would support characterizing it as a direct rather than collateral attack under a technical definition of those terms. For instance, we have described a direct attack on a judgment as

> "an attempt to avoid or correct it in some manner provided by law, in a proceeding instituted for that very purpose, in the same action and in the same court.... Such is a motion or other proceeding to vacate, annul, cancel, or set aside the judgment ... or any proceeding to review it in an appellate court, whether by appeal, error, or certiorari, action to review, bill of review, writ of review, or, in general, any statutory method for avoiding or correcting a judgment."

*People ex rel. Dunbar v. South Platte Water Conservancy Dist.,* 139 Colo. 503, 528, 343 P.2d 812, 826 (1959) (quoting 49 C.J.S., *Judgments* § 408 (1947)). In contrast, we have defined a collateral attack on a judgment as " 'an attempt to avoid, defeat or evade it, or deny its force and effect, in some incidental proceeding not provided by law.' " *Brennan v. Grover,* 158 Colo. 66, 69, 404 P.2d 544, 546 (1965) (quoting 49 C.J.S., *Judgments* § 408(b) (1947)); *see also Black's Law Dictionary* 237 (5th ed. 1979).[5] Whereas a successful direct attack results in a judgment being set aside and the defendant being placed in the same position as before the judgment was entered, *see Waits v. People,* 724 P.2d 1329, 1338 (Colo.1986), a successful collateral attack only bars the use of a judgment in the subsequent, independent proceeding in which the attack is made, *People v. Marquez,* 692 P.2d 1089, 1101 n. 17 (Colo. 1984).

---

5. *Black's Law Dictionary* 237 (5th ed. 1979) defines a collateral attack on a judgment as follows:

> With respect to a judicial proceeding, an attempt to avoid, defeat, or evade it, or deny its force and effect, in some incidental proceeding not provided by law for the express purpose of attacking it. An attack on a judgment in any manner other than by action or proceeding, whose very purpose is to impeach or overturn the judgment; or, stated affirmatively, a collateral attack on a judgment is an attack made by or in an action or proceeding that has an independent purpose other than impeaching or overturning the judgment. *Id.*

A strict application of the foregoing definitions would cause us to characterize a Crim.P. 35(c) motion as a direct attack, for it is filed in the case that resulted in the judgment of conviction and its very purpose is to vacate that judgment. Such a strict application of definitions also would cause us to classify as a collateral attack a motion filed in a separate proceeding to suppress the use of a conviction for some purpose such as establishing a predicate offense under a sentence enhancement statute. We believe, however, that in order to give effect to the legislative intent expressed clearly in subsection (2) of section 16–5–402 it is necessary to recognize a more expansive definition of "collateral attack" as that phrase is used in the statute.

■ The legislature specifically recognized the "difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders" and therefore established time limitations requiring claims to be submitted with relative promptness but still allowing opportunity for discovery, presentation, and successful prosecution of meritorious claims while reliable evidence remains available. The legislative purposes can be achieved only if the time limits on attacking convictions apply to motions filed under Crim.P. 35(c) as well as to challenges to the use of convictions in independent proceedings. Otherwise, for instance, a convicted offender could frustrate a habitual criminal proceeding by asserting a stale claim to set aside a conviction in a Crim.P. 35(c) motion filed in the court in which the conviction was obtained even though that same challenge could not be made in the habitual criminal proceeding itself. Accordingly, we conclude that reference to collateral attacks in section 16–5–402 was intended to include a Crim.P. 35(c) motion seeking directly to set aside a judgment in the same court in which it was obtained as well as to a motion to suppress a conviction in a proceeding where the conviction serves a purpose

such as establishing a predicate offense for some other charge.

Crim.P. 35(c) itself and language employed in our own opinions provide further support for this construction. Crim.P. 35(c)(2)(VI) refers to motions brought under Crim.P. 35(c) as collateral attacks, for it lists as a basis for relief "[a]ny grounds otherwise properly the basis for collateral attack." Additionally, we have indirectly suggested this same construction by references to Crim.P. 35(c) motions as collateral challenges in cases where the issue was not squarely presented. *See Waits*, 724 P.2d at 1336 ("this is a collateral attack on the guilty pleas under Crim.P. 35(c)"); *Bales v. People*, 713 P.2d 1280, 1281 (Colo.1986) ("A defendant may collaterally attack a prior conviction by either filing a Crim.P. 35(c) motion in the sentencing court or by filing a proper motion to prohibit the prosecution from using evidence of a prior proceeding in a pending criminal prosecution."). In *People v. Germany*, 674 P.2d 345, 351 n. 6 (Colo.1983), we recognized the issue of whether section 16–5–402 applies to Crim.P. 35(c) motions for postconviction relief but found it unnecessary to resolve the issue to decide that case. In *Moland v. People*, 757 P.2d 137, 144 n. 5 (Colo.1988), however, we assumed in dictum that the statute does apply to such motions. *See also People v. Shearer*, 181 Colo. 237, 244, 508 P.2d 1249, 1253 (1973) (motion under Crim.P. 35(b) [now 35(c) ] [6] to set aside conviction for error in jury instruction characterized as "collateral attack"); *People v. Brack*, 796 P.2d 49 (Colo.App.1990) (applying section 16–5–402 to Crim.P. 35(c) motion without discussion). These cases establish that "collateral attack" is not a novel characterization of a Crim.P. 35(c) motion. It expresses the intuition that all attacks on a conviction that are raised outside the process of adjudication and appeal by which a judgment achieves finality are in a sense collateral to that process. *See Pennsylvania v. Finley*, 481 U.S. 551, 557, 107 S.Ct. 1990, 1994, 95 L.Ed.2d 539 (1987) ("Postconviction relief is even further removed from the criminal trial than is dis-

---

**6.** When *Shearer* was decided, many of the postconviction remedies provided for in Crim.P.

35(c) were contained in Crim.P. 35(b). The rule was amended on November 13, 1979.

cretionary direct review.... It is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction."). Proceeding from that intuition, we have assumed the applicability of section 16–5–402 to Crim.P. 35(c) motions for postconviction relief.[7]

In *People v. Robinson*, 833 P.2d 832 (Colo.App.1992) (*cert. granted* August 17, 1992), the Colorado Court of Appeals squarely addressed the applicability of section 16–5–402 to Crim.P. 35(c) motions and held that such motions constitute collateral attacks subject to the statute's time limitations. In reaching this conclusion, the court relied on three arguments: (1) our cases and analogous federal authorities [8] have commonly used the term "collateral attack" to include motions to set aside convictions, (2) the General Assembly is presumed to be aware of judicial precedent when it enacts legislation, and (3) section 16–5–402 must be construed expansively in order to effectuate legislative intent. We agree with the analysis that the court of appeals set forth in part IIA of its opinion, wherein it stated that "a common sense reading of the plain language of [section 16–5–402] dictates the conclusion that the General Assembly intended not a technical definition of 'collateral,' but its commonly accepted meaning within a criminal law context." *Id.* at 836. We fully agree that such a reading is essential to give effect to the legislature's explicitly expressed purposes in enacting the statute. *See id.*

■ The defendant asserts, however, that section 16–5–402 is at least ambiguous as to its applicability to Crim.P. 35(c) motions and that therefore the rule of lenity requires that it be construed in his favor to exclude such motions. The rule of lenity requires that penal statutes be construed strictly in favor of the accused. *E.g., People v. District Court*, 713 P.2d 918, 922 (Colo.1986). This rule is not to be applied, however, to defeat the evident intention of the legislature. *Terry*, 791 P.2d at 377 n. 4; *Olinyk v. People*, 642 P.2d 490, 494 (Colo.1982). We conclude that the intention of the legislature is expressed with sufficient clarity that the rule of lenity is not applicable in this case.

B

■ The defendant contends that to construe section 16–5–402 to include Crim.P. 35(c) motions would bring that statute into irreconcilable conflict with section 18–1–410, 8B C.R.S. (1986), and that statutes should be construed to avoid such conflict. We are unpersuaded by this argument.

Section 18–1–410(1) provides in relevant part, "[n]otwithstanding the fact that no review of a conviction of crime was sought

7. Even in civil law we have not adhered to a strict, technical distinction between direct and collateral attacks. Thus, in *People ex rel. Dunbar*, 139 Colo. at 526–28, 343 P.2d at 825–26, we characterized a *quo warranto* proceeding challenging the legality of formation of a water conservancy district, formed by judicial decree, as a direct attack on the decree rather than a collateral attack—which is narrowly limited as to the scope of the issues that can be presented. In so doing we recognized that the statutes provided no other avenue for challenging the decree. *Id.* at 528, 343 P.2d at 826. In contrast, in *People v. Blake*, 128 Colo. 111, 260 P.2d 592 (1953), we disallowed *quo warranto* review of a judicial decree creating a city, reasoning that the statute there at issue permitted appellate review of the proceedings by writ of error. We therefore characterized the People's *quo warranto* proceeding as a collateral attack that must be limited to such issues as fraud, lack of jurisdiction, and invalidity of the decree on its face. *Id.* at 116, 260 P.2d at 596. These cases further illustrate that in our own judicial vocabulary we have not consistently adhered to the strict definitions of "direct" and "collateral" as set forth in *People ex rel. Dunbar* and Black's Law Dictionary.

8. *See, e.g., Finley*, 481 U.S. at 557, 107 S.Ct. at 1994 (motion for postconviction relief "is a collateral attack that normally occurs only after the defendant has failed to secure relief through direct review of his conviction"); *United States v. Frady*, 456 U.S. 152, 157, 157 n. 5, 164–65, 102 S.Ct. 1584, 1589, 1589 n. 5, 1592–93, 71 L.Ed.2d 816 (1982) (postconviction motion under 28 U.S.C. § 2255 (1988), the federal statute serving the same function as Crim.P. 35(c), to set aside death penalty after appeal period had expired was collateral attack; § 2255 itself characterizes postconviction challenges as collateral attacks); *United States v. Hayman*, 342 U.S. 205, 222, 72 S.Ct. 263, 274, 96 L.Ed. 232 (1952) (proceeding under § 2255 is "an independent and collateral inquiry into the validity of the conviction").

by appeal within the time prescribed therefor, or that a judgment of conviction was affirmed upon appeal, every person convicted of a crime is entitled as a matter of right to make applications for postconviction review." The defendant contends that section 16–5–402 conflicts with section 18–1–410 because the former statute imposes time constraints upon collateral attacks on the validity of criminal convictions, whereas the latter statute imposes none.

The principles by which we must resolve this asserted conflict are well established. We must construe statutes harmoniously whenever possible and avoid interpretations that result in inconsistency. *Riley v. People*, 828 P.2d 254, 257 (Colo. 1992); *People v. T.O.*, 696 P.2d 811, 817 (Colo.1985). To the extent that a conflict is irreconcilable, however, the later enactment will prevail over the earlier. *M.S. v. People*, 812 P.2d 632, 637 (Colo.1991); *Public Employees Retirement Ass'n v. Nichols*, 200 Colo. 328, 330, 615 P.2d 657, 658 (1980).

Section 18–1–410 does not address the issue of whether the right to postconviction review is limited in time. Section 16–5–402 imposes such a limitation. Construing these statutes together, we conclude that the time limitations in section 16–5–402 are supplementary to, and not in conflict with, the provisions of section 18–1–410. Section 16–5–402 is also the later-enacted statute. Accordingly, the defendant's challenge based upon the asserted conflict of these statutes must fail.

### C

The defendant argues next that the differences between direct and collateral attacks on judgments of conviction, as those forms of attack are technically defined, are so pronounced that the legislature could not have intended to include the former within the latter when it enacted section 16–5–402. We disagree.

Relying on formal distinctions between a direct and collateral attack, the defendant notes that a collateral attack may be made in the course of an unrelated proceeding in any court, whereas a challenge under

Crim.P. 35(c) must be filed under the original case number in the court that entered the conviction. Furthermore, a successful Crim.P. 35(c) motion results in the same relief that would be available on direct appeal in that it vacates the challenged judgment and places the defendant in the same position that he occupied before the entry of judgment. *See Waits*, 724 P.2d at 1329. In contrast, a successful motion to suppress a prior conviction in an independent proceeding merely precludes use of that conviction in the proceeding and does not vacate the judgment. *See Marquez*, 692 P.2d at 1101 n. 17; *Watkins v. People*, 655 P.2d 834, 837 (Colo.1982). The defendant also notes the different burdens of proof applicable in the two types of challenges. *Compare People v. Hrapski*, 718 P.2d 1050, 1056 (Colo.1986) (when the defendant in a collateral attack in an independent proceeding makes a prima facie showing that his conviction is invalid the burden shifts to the prosecution to show the validity of the judgment by a preponderance of the evidence) *with Kailey v. Colorado State Dep't of Corrections*, 807 P.2d 563 (Colo.1991) (moving party in a Crim.P. 35(c) proceeding bears the burden of proving his claim by a preponderance of the evidence).

These differences in the nature of direct and collateral attacks, as those terms are technically defined, do not persuade us that the General Assembly intended to exempt motions for relief filed under Crim.P. 35(c) from the time limitations in section 16–5–402. As discussed in part IIA, above, we are convinced that the legislature intended to include all forms of postconviction attacks on judgments within that statute. As explained in that part of this opinion, our conclusion is supported by the explicitly stated legislative purposes for which the statute was enacted, *see* § 16–5–402(2), the use of the term "collateral attack" in Crim.P. 35(c) itself, and our prior cases describing Crim.P. 35(c) motions.

### D

As further support for his argument that section 16–5–402 should not be construed to

apply to Crim.P. 35(c) motions, the defendant argues that such a construction is unnecessary to achieve the legislative goal of avoiding repetitious and untimely challenges to a judgment of conviction. He notes that successive Crim.P. 35(c) motions challenging the same conviction are ordinarily precluded, *see* Crim.P. 35(c)(3) ("The court need not entertain a second motion or successive motions for similar relief based upon the same or similar allegations on behalf of the same prisoner."); *People v. Hubbard*, 184 Colo. 243, 249, 519 P.2d 945, 948 (1974) (if a second or successive postconviction relief motion is filed, it may be summarily dismissed unless trial judge finds the failure to include newly-asserted grounds for relief in first motion excusable), and that a defendant must have a present need to challenge a conviction, *Moland*, 757 P.2d 137; *People v. Muniz*, 667 P.2d 1377, 1381 (Colo.1983); *People v. Bucci*, 184 Colo. 367, 520 P.2d 580 (1974). The defendant also relies on *People v. Bravo*, 692 P.2d 325 (Colo.App.1984), which held that the prosecution may assert a claim of laches as a bar to Crim.P. 35(c) relief when a defendant unconscionably delays enforcing his rights and the prosecution suffers a resultant prejudice.

The short answer to the defendant's contention that other remedies are available to preclude stale and repetitive attacks on criminal convictions is that the manner or manners chosen to accomplish this purpose are within the legislative prerogative. The terms of section 16–5–402 satisfy us that

the legislature has elected to adopt the statute's time limitations as one means of accomplishing this purpose.

### E

Finally, the defendant contends that it is necessary to exclude Crim.P. 35(c) motions from the ambit of section 16–5–402 in order to preserve the constitutionality of that statute. Specifically, he asserts that any other construction would result in violation of the prohibition of suspension of the right of habeas corpus [9] and would contravene the separation of powers, due process, and equal protection provisions of the federal and state constitutions. We address these constitutional challenges in the order stated and discover no constitutional infirmity in section 16–5–402 when it is construed to effectuate the legislative intent that it be applied to Crim.P. 35(c) motions.

### 1

The defendant asserts that the application of time limitations to postconviction motions under Crim.P. 35(c) would violate the constitutional prohibition against suspending the right of habeas corpus. We disagree.

Article II, Section 21, of the Colorado Constitution provides that "[t]he privilege of the writ of habeas corpus shall never be suspended, unless when in case of rebellion or invasion, the public safety may require it." [10] The essential purpose of a

9. Although the People urge us to decline to review this constitutional claim on the basis that the defendant failed to present it to the district court, we believe it would best serve the goals of efficiency and judicial economy to address his arguments as they are presently before us.

10. Article I, § 9, Clause 2, of the United States Constitution prohibits suspension of the federal right to the writ of habeas corpus in almost identical language:

The privilege of the writ of habeas corpus shall not be suspended, unless when in cases of rebellion or invasion the public safety may require it.

In *Swain v. Pressley*, 430 U.S. 372, 380–81, 97 S.Ct. 1224, 1229–30, 51 L.Ed.2d 411 (1977), the United States Supreme Court addressed the con-

stitutionality of a District of Columbia postconviction relief statute which the Court determined to be commensurate with habeas corpus except for the fact it was not implemented by tenured judges appointed under Article III of the Constitution. The Court stated that as long as the statute provided a remedy that was neither "inadequate nor ineffective to test the legality of a person's detention," its substitution for habeas corpus would not constitute an unconstitutional suspension of the writ. *Id.* at 381, 97 S.Ct. at 1229–30. In that case, because the administration of the statute by nontenured judges did not render it either inadequate or ineffective, the Court upheld its constitutionality. *Id.* at 383–84, 97 S.Ct. at 1230–31. To the extent that the addition of the time limitations of § 16–5–402 to Colorado's postconviction relief procedures has even an indirect effect on the right to habeas corpus as guaranteed by the federal con-

writ of habeas corpus is to determine whether a defendant who is held in custody is being unlawfully detained by the person holding him.[11] *Kailey*, 807 P.2d at 566; *Mulkey v. Sullivan*, 753 P.2d 1226, 1231–32 (Colo.1988). The procedures by which the right is implemented are set forth in sections 13–45–101 to –119, 6A C.R.S. (1987 & 1992 Supp.) (Habeas Corpus Act). A writ of habeas corpus is generally available only when other relief is not. *Blevins v. Tihonovich*, 728 P.2d 732, 733 (Colo.1986). Because Crim.P. 35(c) "affords all remedies which are available through a writ of habeas corpus," *People ex rel. Wyse v. District Court*, 180 Colo. 88, 92–93, 503 P.2d 154, 156 (1972); *accord People v. Trujillo*, 190 Colo. 497, 499, 549 P.2d 1312, 1313 (1976); *People v. Bucci*, 184 Colo. 367, 370, 520 P.2d 580, 581 (1974), a defendant must ordinarily pursue postconviction relief under that provision rather than through habeas corpus. *Kailey*, 807 P.2d at 566–67. As a consequence, any limitations imposed on Crim.P. 35(c) proceedings by section 16–5–402 may indirectly limit the right of habeas corpus. The question we must decide is whether that statute's time limitations are consistent with the constitutional protection against suspension of the right to habeas corpus. *See Williams v. District Court*, 160 Colo. 348, 357, 417 P.2d 496, 500 (1966) ("states have a positive duty to maintain the right to the writ of habeas corpus unimpaired if it exists in their jurisprudence as a post-conviction remedy").

We made clear in *Germany*, 674 P.2d at 350, that although the State has a legitimate interest in preserving the finality of criminal convictions and in furtherance of that interest "may enact reasonable re-

quirements" for collaterally challenging such convictions, "it may not do so without providing a criminally accused meaningful opportunity to challenge allegedly unconstitutional convictions which the government seeks to use against him in a pending criminal prosecution." *Cf. Swain*, 430 U.S. at 381, 97 S.Ct. at 1229–30 (the substitution of a remedy that is neither "inadequate nor ineffective to test the legality of a person's detention" does not suspend the right to the writ of habeas corpus as guaranteed by the United States Constitution). In accordance with section 18–1–410, 8B C.R.S. (1986), which sets forth grounds for pursuing postconviction relief, Crim.P. 35(c) prescribes the procedural requirements that a person seeking this relief must follow. Review of our previous cases, decisions by courts in other jurisdictions, and consideration of the broad exceptions to the time bar of section 16–5–402 persuade us that the addition of that statute's time limitations to these requirements does not so impair the mechanisms for postconviction relief as to deny persons a meaningful opportunity to attack the constitutionality of prior convictions. Based on that analysis, we hold that section 16–5–402 does not suspend the constitutional right to the writ of habeas corpus.

■■■ It is well settled that states may attach reasonable time limits to the assertion of federal constitutional rights. *Michel v. Louisiana*, 350 U.S. 91, 97, 97 n. 4, 76 S.Ct. 158, 162 n. 4, 100 L.Ed. 83 (1955) (Due Process Clause of the Fourteenth Amendment not violated by state rule requiring timely objections to composition of grand jury); *see also Brown v. Allen*, 344

stitution, we are satisfied that these limitations do not render the procedures either inadequate or ineffective to effectuate that right.

11. Under some circumstances, habeas corpus relief may be available even though it does not result in a complete discharge from custody. *Kodama v. Johnson*, 786 P.2d 417, 419 (Colo. 1990). For instance, in *Naranjo v. Johnson*, 770 P.2d 784, 787 (Colo.1989), we determined that habeas corpus was available to test the constitutionality of statutes governing a prisoner's parole eligibility. Similarly, in *Marshall v. Kort*, 690 P.2d 219, 220, 222 (Colo.1984), we stated that "any restriction in excess of legal restraint

that substantially infringes on basic rights may be remedied through habeas corpus, even if total discharge does not result" and therefore held that a petitioner who had been admitted to the state mental hospital after being found not guilty by reason of insanity could test the legality of his confinement by challenging the hospital's failure to provide treatment. *See also Schooley v. Wilson*, 150 Colo. 483, 374 P.2d 353 (1962) (habeas corpus is proper remedy for parolee to challenge legality of actual imprisonment resulting from allegedly defective parole revocation proceedings even though he would still be in constructive custody if returned to parole status).

U.S. 443, 486, 73 S.Ct. 397, 422, 97 L.Ed. 469 (1953). Furthermore, we have recognized that the legislature can prescribe the procedural mechanisms for the exercise of rights guaranteed by the constitutional habeas corpus provision and that it may also impose reasonable procedural requirements as conditions to the availability of habeas corpus relief. *See Zaborski v. Colorado Dep't of Corrections*, 812 P.2d 236, 237–38 (Colo.1991) (recognizing need for compliance with provisions of Habeas Corpus Act in order to obtain habeas corpus remedy); *Evans v. District Court*, 194 Colo. 299, 302, 572 P.2d 811, 813 (1977) (same); *Stilley v. Tinsley*, 153 Colo. 66, 86–88, 385 P.2d 677, 688–89 (1963) (recognizing that statutes can impose procedural requirements on applications for habeas corpus); *Wyse*, 180 Colo. at 92, 503 P.2d at 156 ("Although the privilege of the writ of habeas corpus is constitutionally guaranteed, the procedural mechanism for its exercise may change.").

In *Davis v. State*, 443 N.W.2d 707 (Iowa 1989), the Iowa Supreme Court addressed a challenge to a statute of limitations on postconviction relief based on the habeas corpus clause contained in that state's constitution. Although it determined that the State's postconviction statute supplanted and replaced the habeas corpus remedy and that the time limitations imposed by the statute restricted the remedy as it was formerly available, *id.* at 709, the court rejected the challenge. In doing so it recognized that states may impose reasonable restrictions on the exercise of constitutional rights and held that the three-year statute of limitations at issue was reasonable as it did not deny the defendant a remedy and thereby "materially impair[ ]" any constitutional right. *Id.* at 709. *See also United States ex rel. Dopkowski v. Randolph*, 262 F.2d 10 (7th Cir.1958) (recognizing the constitutionality of Illinois' five year postconviction challenge limitation statute as it did not render inadequate the defendant's state remedy for attacking prior conviction); *Burford v. State of Tenn.*, 845 S.W.2d 204 (Tenn.1992) (three-year limitation on postconviction relief is not facially unconstitutional). So too, although section 16–5–402 imposes time restrictions on post-

conviction attacks on prior convictions, an accused may still implement the remedy contained in Crim.P. 35(c) as long as he complies with those restrictions. Thus, it cannot be said that the statute acts in a manner that denies persons an adequate avenue of relief. *See Estate of Stevenson v. Hollywood Bar and Cafe, Inc.*, 832 P.2d 718, 721 (Colo.1992) ("Statutes of limitations do not bar the filing of claims, but rather establish time limitations within which specified claims may be filed.").

The fact that section 16–5–402 includes exceptions to the bar of the time limitations calculated to assure that fundamental liberty interests will not be infringed upon provides added support for finding the statute constitutional. By its own terms the statute does not apply to bar challenges to convictions where the court that entered the judgment of conviction lacked jurisdiction over the subject matter of the alleged offense or over the defendant. § 16–5–402(2)(a) and (b). These exceptions ensure that the fundamental defects traditionally recognized as grounds for habeas corpus relief can be asserted at any time. *See Stilley*, 153 Colo. at 83–84, 385 P.2d at 686–87. Furthermore, subsection (2)(c) protects against loss of the right to challenge a conviction as a result of mental disability. Finally, subsection (2)(d) provides an exception when the failure to seek relief within the prescribed period results from justifiable excuse or excusable neglect, a provision adapted to assure that a defendant will never be denied a constitutionally reasonable opportunity to challenge a criminal conviction. The existence of these broadly inclusive exceptions further contributes to our conclusion that the time limitations of section 16–5–402 do not render the mechanisms for postconviction relief insufficient to afford an accused a meaningful opportunity to attack the constitutionality of prior convictions. We are satisfied, therefore, that the limitations do not violate the constitutional prohibition against suspending the right to the writ of habeas corpus.

2

 The defendant argues that if section 16–5–402 is construed to impose time

limitations on Crim.P. 35(c) challenges to criminal convictions, this court's rule-making power will be usurped, thereby violating the constitutional doctrine of separation of powers. This argument stems from the phrase in Crim.P. 35(c) that motions under that rule may be filed "at any time."

The doctrine of separation of powers is well recognized in this state and is constitutionally based. "The Colorado Constitution, in Article III, generally provides that the executive, legislative, and judicial departments each shall exercise only its own powers." *People v. McKenna*, 196 Colo. 367, 370, 585 P.2d 275, 276 (1978). Our state constitution specifically invests this court with authority to "make and promulgate rules governing practice and procedure in ... criminal cases...." Colo. Const. art. VI, § 21. *See McKenna*, 196 Colo. at 370–73, 585 P.2d at 276–77; *People v. Smith*, 189 Colo. 50, 51, 536 P.2d 820, 822 (1975). The legislature, however, has the authority to enact statutes directed to substantive matters as distinguished from procedural matters. *See McKenna*, 196 Colo. at 370–73, 585 P.2d at 277–79. In drawing the distinction between substance and procedure, we have held that in general, rules adopted to permit the courts to function and function efficiently are procedural whereas matters of public policy are substantive and are therefore appropriate subjects for legislation. *McKenna*, 196 Colo. at 371–72, 585 P.2d at 277; *People v. Hollis*, 670 P.2d 441, 442 (Colo.App.1983). We noted in *McKenna* that legislative policy and judicial rule making powers may overlap to some extent as long as there is no substantial conflict between statute and rule. *McKenna*, 196 Colo. at 373, 585 P.2d at 279.

We recognize that courts have differed in characterizing statutes of limitations as procedural or substantive. *Compare Davis v. Mills*, 194 U.S. 451, 454, 24 S.Ct. 692, 693, 48 L.Ed. 1067 (1904) ("ordinary limitations of actions are treated as laws of procedure"); *Federal Deposit Ins. Corp. v. Petersen*, 770 F.2d 141, 142 (10th Cir.1985) ("Statutes of limitation are generally considered to be procedural rather than substantive law.") *with Cook v. Rockwell Int'l*

*Corp.*, 755 F.Supp. 1468, 1482 (D.Colo.1991) ("Statutes of limitations are substantive."); *Sherwood v. Graco, Inc.*, 427 F.Supp. 155, 157 (D.Colo.1977) ("Limitation periods are matters of legislative choice and are enacted for 'the purpose of promoting justice, discouraging unnecessary delay and forestalling the prosecution of stale claims' ") (quoting *Klamm Shell v. Berg*, 165 Colo. 540, 546, 441 P.2d 10, 13 (1968)); *Jones v. Cox*, 828 P.2d 218, 224 (Colo.1992) ("The purpose of statutes of limitation is to promote justice, discourage unnecessary delay and forestall prosecution of stale claims."); *People in the Interest of L.B.*, 179 Colo. 11, 18, 498 P.2d 1157, 1161 (1972) (statutes of limitations "are founded on state policy and are usually deemed to be a proper exercise of the powers of sovereignty").

In the present case the statute itself reflects that it has its source in important considerations of public policy. Section 16–5–402(2) explicitly recognizes that the statute is designed to alleviate "the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders." Although it also indirectly affects court procedure, the overriding purpose of the statute is not to promote efficiency in the judicial process but rather to uphold the finality of judgments and give effect to statutes directed at imposing more severe sanctions on prior offenders. As the Colorado Court of Appeals stated in *Robinson*, 833 P.2d at 836, the statute has an incidental effect upon procedure but "is primarily an expression of public policy." *Cf. McKenna*, 196 Colo. at 370–73, 585 P.2d at 277–79 (rape shield statute was based on important considerations of public policy and, although also implicating procedure in the courts, was an appropriate subject for legislative action). Accordingly, we conclude that for purposes of the separation of powers issue, section 16–5–402 is a substantive statute, is an appropriate subject for legislative action, and does not infringe on the rule-making power of the judiciary.

3

■ The defendant asserts next that if section 16–5–402 is construed to apply to

Crim.P. 35(c) motions, it will violate due process of law under the Fourteenth Amendment to the United States Constitution and Article II, Section 25, of the Colorado Constitution. We disagree.

In *Germany,* we considered a challenge to section 16–5–402 as it existed before subsection (2)(d) was enacted to except from the statute's time bar delays in seeking relief that are attributable to justifiable excuse or excusable neglect. We recognized that a conviction imposed in violation of a basic constitutional right may not be used to support guilt or enhance punishment. *Germany,* 674 P.2d at 349. We also recognized, however, that the State has a legitimate interest in preserving the finality of criminal convictions. *Id.* at 350. In view of the fact that infringement of a constitutional right often affects life and liberty, *see id.* at 350–51 n. 5, we held that the State's ability to impose reasonable time limitations on collateral challenges to prior criminal convictions is itself subject to the requirement that a defendant be given a reasonable opportunity to challenge a conviction that the government seeks to use against him. *Id.* at 350. Because section 16–5–402 imposed a time bar "without providing the defendant an opportunity to show that the failure to assert a timely constitutional challenge was the result of circumstances amounting to justifiable excuse or excusable neglect," it violated federal and state guarantees of due process of law. *Id.* at 354. In 1984 the legislature adopted section 16–5–402(2)(d) to remedy

this defect. Ch. 117, sec. 1, § 16–5–402, 1984 Colo.Sess.Laws 486, 486.

*Germany* also indicated, however, that section 16–5–402(1) suffered from another infirmity. Because the statute was not limited in application to convictions entered after its enactment, it precluded constitutional challenges to convictions by persons convicted of crimes more than the period of limitation prior to enactment of the statute. This, we indicated in *Germany,* was inconsistent with due process of law. *Id.* at 351–52. In *Fagerholm,* 768 P.2d 689, we addressed this feature of the statute and, in order to preserve the statute's constitutionality, construed it to include a five-year grace period within which persons convicted before the effective date of the Act who would otherwise be barred by the retroactive application of the statute could raise challenges based on constitutional grounds.

The United States Supreme Court has recognized, as we did in *Germany,* that under the Due Process Clause of the Fourteenth Amendment, a state may attach reasonable time limitations to the assertion of federal constitutional rights. *Michel,* 350 U.S. at 91, 76 S.Ct. at 158. The periods of time allowed by section 16–5–402(1) are reasonable in general, and subsection (2) allows exceptions for those situations where their reasonableness might be drawn into question. We therefore hold that the time limitations of section 16–5–402, with the exceptions contained in subsection (2), on their face are consistent with due process of law.[12]

**12.** The defendant argues that if "excusable neglect," in § 16–5–402(2)(d), is construed according to the definition the phrase is given in civil law, *see People v. Fultz,* 761 P.2d 242, 244 (Colo. App.1988) (excusable neglect exists if "there has been a failure to take proper steps at the proper time, not in consequence of carelessness, but as a result of some unavoidable hindrance or occurrence"), the exception contained in that subsection is not sufficiently expansive to meet constitutional requirements. As we discuss below, *see* part IIIA, we disagree with *Fultz*'s attempt to establish a precise definition of "excusable neglect" because the scope of § 16–5–402(2)(d) must be determined with respect to the unique factual situation presented in any given case. However, to the extent that *Fultz* remains persuasive because the particular factors identified in the case may affect a determi-

nation of whether a defendant qualifies for the exception, any concern over that court's treatment of the "excusable neglect" issue overlooks the fact that "justifiable excuse" is an additional reason to avoid the time bar. We are confident that, taken in combination, these reasons provide defendants a constitutionally meaningful opportunity to assert their claims.

The defendant's argument also fails when considered against United States Supreme Court precedent requiring prisoners to show "cause and prejudice" for failing to comply with state procedural requirements in order to obtain postconviction review of their constitutional claims in federal court. The Supreme Court has determined that prisoners seeking habeas corpus relief in the federal courts who fail to meet a state's statutory time limitations in raising constitutional objections must show "cause" and

438

The defendant asserts further that section 16–5–402 violates due process of law because it effects a waiver of the right to attack a prior conviction solely on the basis of the passage of time and therefore contravenes the established principle that a waiver ·of a fundamental right must be voluntarily, knowingly, and intelligently made. *See, e.g., People v. Arguello*, 772 P.2d 87, 94 (Colo.1989) (requiring such to effect a waiver of the fundamental right to counsel); *Perez v. People*, 745 P.2d 650, 652–53 (Colo.1987) (requiring such for a waiver of the right to object to handwriting expert's testimony). This argument is not persuasive.

 Defendants do not have a constitutional right to postconviction review. *Finley*, 481 U.S. at 557, 107 S.Ct. at 1994 (states have no obligation to provide postconviction review); *see also Germany*, 674 P.2d at 351 (characterizing the right to seek collateral review of a constitutionally flawed conviction as a " 'substantive right' " guaranteed by statute); *People v. Duran*, 757 P.2d 1096, 1097 (Colo.App. 1988) (relying on *Finley* for the view that there is no Sixth Amendment right to counsel in a Crim.P. 35 hearing and stating that no such right exists under Colo. Const. art. II, § 16). Because the right to postconviction review is statutory rather than constitutional, a waiver of the right need only be voluntary; it need not be knowing and intelligent. *Schneckloth v. Bustamonte*, 412

U.S. 218, 237, 93 S.Ct. 2041, 2052–53, 36 L.Ed.2d 854 (1973); *People v. Allen*, 744 P.2d 73, 75 (Colo.1987).

Section 16–5–402 does not undermine the voluntariness of a defendant's decision whether to challenge the constitutionality of a prior conviction. It is the defendant's choice either to file such a challenge or to allow the limitations period to lapse with the result that use of Crim.P. 35(c) is foreclosed as an avenue of relief. *See also Michel*, 350 U.S. at 99, 76 S.Ct. at 163 ("No procedural principle is more familiar ... than that a constitutional right may be forfeited in criminal as well as civil cases by the failure to make timely assertion of the right.") (quoting *Yakus v. United States*, 321 U.S. 414, 444, 64 S.Ct. 660, 677, 88 L.Ed. 834 (1944)). To the extent that situations may arise that bring the voluntariness of this decision into question, we are satisfied that the justifiable excuse or excusable neglect exception to the bar of the time limitations contained in section 16–5–402(2)(d) provides a court with a sufficient means of ensuring that the statute is applied in accordance with due process.

4

██ The defendant argues as well that section 16–5–402 violates equal protection of the laws under the Fourteenth Amendment to the United States Constitution and Article II, Section 25, of the Colorado Con-

"prejudice" to obtain review of their claims. *See Frances v. Henderson*, 425 U.S. 536, 542, 96 S.Ct. 1708, 1711–12, 48 L.Ed.2d 149 (1976) (state prisoner who failed to follow Louisiana law requiring objections to composition of grand jury to be made before trial thereby waiving his claim in the state courts must show cause and actual prejudice before federal court will entertain a collateral attack on his conviction). The Court has defined this standard, stating that whether "cause" for a procedural default exists "must ordinarily turn on whether the prisoner can show that some objective factor external to the defense impeded ... compl[iance] with the State's procedural rule." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d 397 (1986); *accord Coleman v. Thompson*, —— U.S. ——, ———–——, 111 S.Ct. 2546, 2566–67, 115 L.Ed.2d 640 (1991). Because this standard focuses on the existence of some external impediment precluding a defendant's compliance with a particular state rule, it is analogous to

the definition accorded "excusable neglect" in *Fultz.* Consequently, the fact that requiring defendants to meet the "cause" standard has withstood a due process challenge, *see Frances*, 425 U.S. at 540–42, 96 S.Ct. at 1710–11, supports finding the factors set forth in *Fultz* similarly valid.

Also persuasive are decisions in other jurisdictions upholding the constitutionality of statutes of limitation that are similar to § 16–5–402 but that do not provide a justifiable excuse or excusable neglect exception. *See, e.g., Randolph*, 262 F.2d at 12 (three-year time limitation on the filing of petitions under the Illinois Post–Conviction Hearing Act determined to be constitutional); *Davis*, 443 N.W.2d at 710 (three-year limitation on petitions for postconviction relief "provides a valid opportunity for persons to challenge their convictions" and therefore does not violate either federal or state due process rights); *Burford*, 845 S.W.2d 204 (three-year limitation on postconviction relief is not facially unconstitutional).

stitution.[13] The basis for this challenge is that whereas collateral attacks on convictions for all felonies other than class 1 felonies are subject to a three-year limitation, there is no time limit imposed for challenges relating to class 1 felonies.

 Equal protection of the laws guarantees that similarly situated persons will receive like treatment. *People v. Mozee,* 723 P.2d 117, 126 (Colo.1986); *J.T. v. O'Rourke,* 651 P.2d 407, 413 (Colo.1982). As long as no fundamental right is at stake and the legislative scheme is not based either on a suspect classification or on a gender-based classification, the test for determining whether there is an equal protection violation is "whether the classification is reasonable and bears a rational relationship to legitimate State objectives." *O'Rourke,* 651 P.2d at 413; *accord Estate of Stevenson,* 832 P.2d at 723.[14] Statutes are presumed to be constitutional, and a party challenging constitutionality on equal protection grounds bears the burden of proving beyond a reasonable doubt that a statutory classification is unreasonable or, if reasonable, is unrelated to any legitimate governmental objective. *E.g., Persichini v. Brad Ragan, Inc.,* 735 P.2d 168, 174–75 (Colo.1987). Applying these principles in the present case, we are satisfied that persons convicted of class 1 felonies are not similarly situated with those convicted of other felonies and that the distinction made between these groups in section 16–5–402(1) is reasonable and bears a rational relationship to the State's legitimate interest in preserving the finality of criminal convictions. *See Germany,* 674 P.2d at 350.

Persons convicted of class 1 felonies are not similarly situated with persons convicted of other felonies by virtue of the seriousness of the penalties to which these groups are subject. Conviction of a class 1 felony requires imposition of a sentence of death or life imprisonment. § 18–1–105, 8B C.R.S. (1992 Supp.). Because of the seriousness of this penalty, the legislature could have reasonably believed that a time bar on an assertion of a claim for postconviction relief should not apply to class 1 felons.

The defendant contends, however, that section 16–5–402 violates equal protection because it distinguishes between class 1 felons and those who also receive life sentences under the habitual criminal statute, § 16–13–101(2), 8A C.R.S. (1986), by imposing its time limitations only on this latter group. His argument fails for two reasons. First, unlike class 1 felons, persons convicted of being habitual offenders are not subject to the death penalty which, if imposed, may not actually be carried out until several years after the date of conviction. Although the legislature sought to maintain the finality of prior convictions, it may well have wanted to afford a person who receives a death sentence the maximum amount of time to challenge his underlying conviction so as to ensure the validity of that conviction. It is certainly within the province of the legislature to draw this distinction in view of the severity of this penalty.

In addition, the fact that defendants cannot be sentenced to life imprisonment as habitual criminals unless they have three prior felony convictions, § 16–13–101(2), further distinguishes them from class 1 felons. Whereas a defendant in the former group necessarily had a prior opportunity to attack the predicate convictions and therefore avoid adjudication as a habitual offender, a person convicted of a class 1

13. The due process clause of Article II, § 25, of the Colorado Constitution includes a guarantee of equal protection of the laws even though that guarantee is not explicitly set forth. *People v. Dunoyair,* 660 P.2d 890, 893 n. 3 (Colo.1983); *People v. Montoya,* 647 P.2d 1203, 1205 n. 4 (Colo.1982); *People v. Gutierrez,* 622 P.2d 547, 554 n. 6 (Colo.1981).

We declined to address whether § 16–5–402 violates equal protection in *Germany* based on our conclusion that the statute as it appeared

before the justifiable excuse or excusable neglect exception was added violated due process of law. *Germany,* 674 P.2d at 348 n. 2.

14. The defendant sets forth this test as a basis for his argument and makes no assertion that we ought to apply a more stringent standard. We therefore assume for purposes of this case that the rational basis test is appropriate for determining whether § 16–5–402 satisfies equal protection guarantees.

felony and sentenced to life imprisonment based on that single conviction has enjoyed no such extended opportunity. We believe it is reasonable for the legislature to require persons to take advantage of available avenues of relief in a timely manner rather than wait until habitual criminal charges are filed to assert their claims. Because we also believe that the distinction between such persons and those convicted of class 1 felonies is rationally related to the purpose of giving force to habitual offender statutes, we conclude that the defendant has failed to prove beyond a reasonable doubt that the statutory classification violates the constitutional guarantee of equal protection of the laws.

### III

The defendant argues that the district court erred by not addressing the merits of his Crim.P. 35(c) motion. He contends that his failure to file a timely Crim.P. 35(c) motion resulted from circumstances amounting to justifiable excuse or excusable neglect and that his present motion is therefore excepted from the time bar of section 16–5–402(1).[15] So that the defendant's argument may be properly addressed, we first determine the framework within which an assertion of justifiable excuse or excusable neglect is to be evaluated and then remand the case for the district court to consider his claim within this framework.

### A

The genesis of the justifiable excuse or excusable neglect exception set forth in section 16–5–402(2)(d) provides helpful guidance for determining the framework within which a delay in seeking postconviction relief is to be assessed. As earlier noted, the legislature adopted the exception to cure the constitutional infirmity identified in *Germany*. There, we determined that without such an exception, the statute failed to provide a criminally accused "a meaningful opportunity to challenge allegedly unconstitutional convictions" sought to be used against him in a pending criminal prosecution and that it therefore violated due process of law. *Germany*, 674 P.2d at 354. We reached this conclusion after considering an accused person's interest in ensuring that an unconstitutional conviction is not used against him, society's interests in maintaining the integrity of the criminal justice system, and the State's interests in preserving the finality of criminal convictions and in implementing statutes requiring enhanced sentences for habitual offenders. *Id.* at 349–50. Upon weighing these interests we determined that the legislative enactment of reasonable requirements for collateral challenges to prior convictions would not violate due process as long as an accused retains a "meaningful opportunity" to challenge allegedly unconstitutional convictions. *Id.* at 350. We then illustrated our concern that the statute as it then existed did not provide such an opportunity by the use of examples showing its capricious effects.[16] Because section 16–5–402 made no distinction between constitutional

15. A court must hold an evidentiary hearing on a Crim.P. 35(c) motion unless the motion, the files, and the record clearly establish that the allegations in the motion lack merit and do not entitle the defendant to relief. *White v. District Court*, 766 P.2d 632, 634 (Colo.1988); *Trujillo*, 190 Colo. at 499, 549 P.2d at 1313. "A defendant need not set forth the evidentiary support for his allegations; instead, a defendant need only assert facts that if true would provide a basis for relief...." *White*, 766 P.2d at 635; *accord People v. Brack*, 796 P.2d 49, 50 (Colo. App.1990). Similarly, a Crim.P. 35(c) motion must allege facts that if true would establish justifiable excuse or excusable neglect in order to entitle the moving party to a hearing on the applicability of this exception to the time bar of § 16–5–402(1). *See Brack*, 796 P.2d at 50.

16. We noted that a person who pleads guilty to a felony under a statute declared unconstitutional more than three years after the conviction would be powerless to challenge the conviction, that a felony conviction entered in violation of the constitutional protection against double jeopardy could not be challenged after three years had passed, that convictions based on uncounseled and unconstitutional pleas could not be challenged after three years "notwithstanding the existence of facts or circumstances amounting to a justifiable excuse," and that convictions could not be challenged after three years even though they are later discovered to have been based on tainted or perjured evidence. *Germany*, 674 P.2d at 352–53.

challenges "which could and should have been asserted in a timely manner and those which, due to special circumstances or causes, could not have been raised within the applicable period of limitation," we concluded that it violated due process of law. *Id.* at 353, 354. We specifically suggested that a justifiable excuse or excusable neglect exception would cure this infirmity because it would allow the vindication of constitutional claims in those circumstances where a failure to assert them within the prescribed period resulted from something other than the defendant's "culpable neglect." *See id.* Thereafter, the legislature adopted that very exception by enacting section 16–5–402(2)(d). Because the strength of the individual and societal interests implicated in the insulation of convictions from collateral attack will vary with every situation in which section 16–5–402 is invoked, any attempt to define precisely the meaning of the exception would be unworkable and unwise.[17] Rather, the applicability of the justifiable excuse or excusable neglect exception must be evaluated by balancing the interests under the facts of a particular case so as to give effect to the overriding concern enunciated in *Germany* that a defendant have the meaningful opportunity required by due process to challenge his conviction. In making this determination we believe it appropriate to consider the circumstances existing throughout the entire period from the inception of the conviction in question, particularly because we have construed section 16–5–402 to apply retroactively.

In *Fultz,* 761 P.2d at 244, the Colorado Court of Appeals adopted a definition of "excusable neglect" in accordance with interpretations of that phrase in civil cases.[18] Although we disagree that such a precise definition will invariably ensure the constitutional application of section 16–5–402, the court of appeals did rely on several factors that are relevant in considering whether section 16–5–402(2)(d) is satisfied. In reaching the conclusion that the defendant in *Fultz* did not meet the statutory exception, the court of appeals found it persuasive that there was no evidence of any events that would have prevented him from seeking postconviction relief, that he made only minimal effort in investigating the validity of his conviction while incarcerated, and that once released he failed to invoke remedies that were available to him under the laws of the state where he had been convicted. *Id.*

We agree that factors such as the existence of circumstances or outside influences preventing a challenge to a prior conviction and the extent to which a defendant having reason to question the constitutionality of a conviction investigates its validity and takes advantage of avenues of relief that are available to him are relevant in determining whether justifiable excuse or excusable neglect exists in a particular case. Also relevant is whether a defendant had any previous need to challenge a conviction,[19] whether he either knew that it was constitutionally infirm or had reason to question its validity, whether he had other

---

17. This was well pointed out by the drafters of IV ABA *Standards for Criminal Justice* § 22–2.4 Commentary (2d ed. 1980), when they declined to adopt a specific time period for barring postconviction review on the basis that short periods of limitation would require exceptions "to deal with the manifold differences in the situation of prisoners," whereas long periods would bar only the stalest of claims. *See also Germany,* 674 P.2d at 350–51 n. 5 (observing that any increasing staleness of a claim is offset by a decreasing state interest in punishment). Although the drafters took the position that the application of specific periods of limitation for postconviction review is unsound, this does not preclude legislatures from adopting such statutes as long as they also provide adequate safeguards to satisfy constitutional concerns.

18. The court of appeals stated that excusable neglect exists if "there has been a failure to take proper steps at the proper time, not in consequence of carelessness, but as a result of some unavoidable hindrance or occurrence." *Fultz,* 761 P.2d at 244.

19. In *Moland,* 757 P.2d at 143, we determined that a defendant who has completely served his sentence for a conviction that is being challenged under Crim.P. 35(c) must demonstrate a present need for the relief sought and that such a need must exist at the time that a hearing is held on his motion. We made clear that IV ABA *Standards for Criminal Justice* § 22–2.4 (2d ed. 1986) provided the guidelines for determining whether present need exists in a particular case. Under that standard, there is a sufficient showing of present need where:

means of preventing the government's use of the conviction so that a postconviction challenge was previously unnecessary, as well as the extent of time between the date of conviction and the defendant's challenge and the effect that the passage of that time has on the State's ability to defend against the challenge. Although we do not intend this to be an exhaustive list, we do believe that such factors are important in assessing the relative strengths of the various interests at stake and therefore must be considered in determining whether a defendant has established justifiable excuse or excusable neglect under section 16–5–402(2)(d).[20]

## B

The remaining issue is whether the defendant in this case qualifies for the

(i) an applicant is facing prosecution or has been convicted and the challenged conviction or sentence may be, or has been, a factor in sentencing for the current offense;

(ii) an applicant may be disadvantaged in obtaining parole under a later sentence; or

(iii) an applicant is under a civil disability resulting from the challenged conviction and preventing the applicant from a desired and otherwise feasible action or activity.

§ 22–2.4(c)(i)(ii)(iii). Of course, a defendant has a present need for relief throughout the period in which he is serving a sentence for that conviction. *See Moland,* 757 P.2d at 140.

In *People v. Stephens,* 837 P.2d 231, 235–36 (Colo.App.1992) (*cert. granted* September 21, 1992), the court of appeals specifically addressed the impact that the enactment of § 16–5–402 and our decision in *Fagerholm* had on the question of present need to institute postconviction proceedings. The court concluded that the statute and the *Fagerholm* deadline created a present need in themselves. *Id.* We agree with the reasoning in that opinion. In order to effectuate the legislative purposes of section 16–5–402 and the reason that we construed the statute to include a five-year grace period, *see Fagerholm,* 768 P.2d at 693 (this period affords adequate notice to persons whose rights to raise constitutional challenges to prior convictions are directly affected by the statute), we must conclude that the statute's enactment and our decision, like the factors described in *Moland,* 757 P.2d at 140, created a present need for defendants with convictions antedating the statute by more than the limitations period to institute the challenges or be forever barred from doing so.

**20.** The United States Supreme Court has similarly adopted a balancing approach for determining whether "excusable neglect" exists under

justifiable excuse or excusable neglect exception so as to except his challenge to his 1964 felony conviction for the theft of auto parts from the bar of the time limitations in section 16–5–402(1). Whether a defendant qualifies for this statutory exception is a question of fact ordinarily to be resolved by the trial court. *See Swainson v. People,* 712 P.2d 479, 481 (Colo.1986) (whether defendant made sufficient showing of excusable neglect under Crim.P. 45(b) so as to afford him an extension of time for filing a Crim.P. 35 motion for sentence reduction was a matter for district court as the record contained insufficient factual findings to enable Supreme Court to address merits of his claim). In the present case the district court granted the prosecution's motion to strike after it

Rule 9006(b)(1) of the Federal Rules of Bankruptcy Procedure so as to allow a creditor in a Chapter 11 bankruptcy proceeding to file a proof of claim after the deadline for such filing has passed. In *Pioneer Inv. Serv. Co. v. Brunswick Assocs. Ltd. Partnership,* —— U.S. ——, ——, 113 S.Ct. 1489, ——, 123 L.Ed.2d 74 (1993), the Court first decided that Rule 9006(b)(1), under which a bankruptcy court may extend certain filing deadlines if a party's failure to make a timely filing was "the result of excusable neglect," is not limited to those instances where the party's delay was caused by circumstances beyond its reasonable control. *Id.* —— U.S. at ——–——, 113 S.Ct. at 1492–96. The Court then set forth a balancing test for determining whether a party's neglect of a deadline was "excusable," stating that the question "is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission ... [including] ... the danger of prejudice to the [non-moving party], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith." *Id.* —— U.S. at ——–——, 113 S.Ct. at ——. The Court reached this conclusion after it compared "excusable neglect" under Rule 9006(b)(1) with "excusable neglect" under Fed. R.Civ.P. 6(b), which it characterized as "a somewhat 'elastic concept,'" *id.* —— U.S. at ——, 113 S.Ct. at 1498 (quoting 4A C. Wright & A. Miller, *Federal Practice and Procedure* § 1165, p. 479 (2d ed. 1987)). We agree with that characterization and therefore believe that the best approach for determining whether a defendant satisfies the justifiable excuse or excusable neglect standard under § 16–5–402(2)(d) is a weighing of the various interests at stake.

determined that "there was nothing 'extraordinary' about the circumstances surrounding Defendant's failure to act timely." Not having the benefit of our present decision, the district court did not apply the analysis set forth above. Under these circumstances, we consider it appropriate to remand this case so that the district court can address the defendant's justifiable excuse or excusable neglect claim under the proper standards. *See, e.g., People v. Hampton,* 187 Colo. 131, 134, 528 P.2d 1311, 1313 (1974) (case remanded for hearing on whether defendant established present need for postconviction relief).[21]

## IV

We hold that section 16–5–402 applies to postconviction challenges to criminal convictions under Crim.P. 35(c), and that such construction does not violate constitutional protections of habeas corpus, separation of powers, due process, or equal protection of the laws. We also hold that further proceedings in district court are necessary in order to determine whether the defendant's failure to challenge his 1964 conviction within the limitations period of section 16–5–402 was based on justifiable excuse or excusable neglect under subsection (2)(d) of that statute so as to qualify his challenge for an exception to the limitation period of the statute. Accordingly, we reverse the order of the district court and remand this case to that court for further proceedings consistent with this opinion.

VOLLACK, J., does not participate.

---

**21.** We explain today for the first time the standards applicable to the evaluation of a justifiable excuse or excusable neglect claim. For this reason, the pleading requirements set forth in note 15, above, should not be retroactively applied to defeat the defendant's application for relief in the present case.