Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us.  Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
June 17, 2019

**2019 CO 60**

**No. 17SC728, *People v. Alvarado Hinojos*—Postconviction Relief—Justifiable Excuse or Excusable Neglect—Entitlement to a Hearing—Advice by Plea Counsel Regarding the Immigration Consequences of a Guilty Plea.**

The supreme court agreed to review this case to determine whether a noncitizen defendant is entitled to a hearing on the timeliness of his Crim. P. 35(c) postconviction motion when he invokes the justifiable excuse or excusable neglect exception to the statutory time bar and alleges that plea counsel provided him erroneous advice regarding the immigration consequences of his plea.  It concludes that the answer generally depends on the specific allegations set forth in the motion; however, when the plea agreement or the plea hearing transcript is submitted, the trial court should consider it in conjunction with the allegations advanced.

Because the factual allegations in the defendant's motion (which must be assumed to be true), when considered in conjunction with the plea agreement, are insufficient to establish justifiable excuse or excusable neglect for failing to collaterally attack the validity of his misdemeanor conviction within the applicable limitations period, the supreme court rules that he is not entitled to a hearing.  The immigration advisement contained in the plea agreement, at a minimum, gave the defendant reason to question

the accuracy of his plea counsel's advice regarding the immigration consequences of his plea. Thus, even taking at face value the allegations in the motion, the defendant was on notice at the time of his plea that he needed to diligently investigate his plea counsel's advice and, if appropriate, file a timely motion challenging the validity of his conviction.

**2019 CO 60**

**Supreme Court Case No. 17SC728**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 15CA1780

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

Frederico Alvarado Hinojos.

**Judgment Reversed**
*en banc*
June 17, 2019

**Attorneys for Petitioner:**
Philip J. Weiser, Attorney General
Joseph G. Michaels, Senior Assistant Attorney General
        *Denver, Colorado*

**Attorneys for Respondent:**
The Noble Law Firm, LLC
Antony Noble
Matthew Fredrickson
        *Lakewood, Colorado*

**JUSTICE SAMOUR** delivered the Opinion of the Court.
**JUSTICE GABRIEL** dissents, and **JUSTICE HOOD** and **JUSTICE HART** join in the dissent.

¶1     Is a noncitizen defendant entitled to a hearing on the timeliness of his Crim. P. 35(c) postconviction motion when he invokes the justifiable excuse or excusable neglect exception and alleges that plea counsel provided him erroneous advice regarding the immigration consequences of his plea? The answer generally depends on the specific allegations set forth in the motion. However, when the plea agreement or the plea hearing transcript is submitted, the trial court should consider it in conjunction with the allegations advanced.

¶2     In this case, we hold that Frederico Alvarado Hinojos is not entitled to a hearing. The factual allegations in his motion (which we must assume are true), when considered in conjunction with the plea agreement, are insufficient to establish justifiable excuse or excusable neglect for failing to collaterally attack the validity of his misdemeanor conviction within the applicable eighteen-month limitations period. The immigration advisement contained in the plea agreement, at a minimum, gave Alvarado Hinojos reason to question the accuracy of his plea counsel's advice regarding the immigration consequences of the plea. Thus, even taking at face value the allegations in his motion, he was on notice at the time of his plea that he needed to diligently investigate his counsel's advice and, if appropriate, file a timely motion challenging the validity of his conviction.

¶3     In the companion case we announce today, *People v. Chavez-Torres*, 2019 CO 59, __ P.3d __, we reach the opposite conclusion because we determine that the allegations set forth there, when considered together with the plea agreement and the plea hearing transcript, are sufficient to establish justifiable excuse or excusable neglect.

2

Chavez-Torres alleged that his plea counsel provided him no advice regarding the immigration consequences of the plea and that he had no reason to question or investigate counsel's omission. Further, although he was not required to do so, Chavez-Torres submitted the plea agreement and the plea hearing transcript with his motion, and neither referenced the immigration consequences of his plea.

¶4 The court of appeals ruled in this case that Alvarado Hinojos's motion merited a hearing on the applicability of the justifiable excuse or excusable neglect exception. We disagree and therefore reverse its judgment. We remand for further proceedings consistent with this opinion.

## I. Factual and Procedural History

¶5 Alvarado Hinojos, a citizen of Mexico, immigrated to the United States in 1991 with his wife and two daughters. Sixteen years later, in 2007, he pled guilty to menacing with a deadly weapon (a class five felony) and third-degree assault (a class one misdemeanor). The plea agreement included the following immigration advisement:

> I understand that if I am not a citizen of the United States and I plead guilty or nolo contendere ("no contest") to a crime, my plea may result in deportation and/or exclusion from the United States or denial of naturalization in the United States.

¶6 Consistent with the plea agreement, the trial court imposed a two-year deferred judgment and sentence on the felony count and a two-year sentence to probation on the misdemeanor count. Alvarado Hinojos successfully completed both his deferred judgment and his probation sentence. Therefore, in 2009, the trial court dismissed the

3

guilty plea to the felony count and terminated the probation sentence on the misdemeanor count.

¶7 In July 2015, Alvarado Hinojos filed a motion for postconviction relief in which he collaterally attacked his third-degree assault conviction under Crim. P. 35(c).[1] Alvarado Hinojos asserted that his plea was invalid because he received ineffective assistance from his plea counsel. More specifically, Alvarado Hinojos alleged that: (1) his plea counsel had advised him that his guilty plea "would not have adverse immigration consequences"; (2) he pled guilty based on his plea counsel's advice; (3) he had "recently" consulted an immigration attorney and had discovered that his guilty plea does have immigration consequences; (4) his guilty plea "renders him inadmissible and therefore prevents him from remaining in the United States"; and (5) had he not pled guilty, "he could have applied for adjustment to" his current immigration status. Alvarado Hinojos acknowledged that he filed his motion after the expiration of the eighteen-month deadline in section 16-5-402(1), C.R.S. (2018), which governs collateral attacks on the validity of misdemeanor convictions. But he maintained that the justifiable excuse or excusable neglect exception in subsection (2)(d) of the statute applied. Alvarado Hinojos submitted a copy of the plea agreement with his motion. The prosecution objected to the

---

[1] In the same pleading, Alvarado Hinojos sought to withdraw his guilty plea to felony menacing pursuant to Crim. P. 32(d). The trial court denied that request and the court of appeals affirmed the ruling. Because that issue is not before us, we limit our discussion to Alvarado Hinojos's collateral attack on his third-degree assault conviction.

4

motion, arguing that it was untimely and, if timely, then meritless, and that, in any event, the trial court lacked jurisdiction.

¶8     The trial court denied Alvarado Hinojos's Rule 35(c) motion without a hearing, ruling that it was filed after the applicable limitations period and that the facts alleged, if true, would not constitute justifiable excuse or excusable neglect pursuant to subsection (2)(d).  Alvarado Hinojos appealed, and a division of the court of appeals reversed in a split decision.  *People v. Alvarado Hinojos*, No. 15CA1780, ¶ 25 (Colo. App. Sept. 7, 2017).  The majority reasoned that Alvarado Hinojos's factual allegations, if true, established that he had received incorrect advice from plea counsel, that he had no reason to question the validity of his conviction until he learned from an immigration attorney that he had been erroneously advised by plea counsel, and that it would be unreasonable to expect a defendant who receives incorrect advice to file a collateral attack on a conviction just in case the plea results in adverse immigration consequences.  *Id.* at ¶¶ 18, 21–25.  Therefore, concluded the majority, Alvarado Hinojos alleged facts which, if true, "could support a finding of justifiable excuse or excusable neglect."  *Id.* at ¶ 25.

¶9     In his dissent, Judge Dailey explained that he was persuaded by the prosecution's contention that "the use of [an ineffective-assistance-of-counsel] *merits* argument to *procedurally* circumvent the time period prescribed in section 16-5-402 defeats the very purpose of section 16-5-402's time limits."  *Id.* at ¶ 32 (Dailey, J., dissenting) (emphases added).  Alternatively, Judge Dailey observed that the immigration advisement in the plea agreement gave Alvarado Hinojos reason to question the accuracy of his plea counsel's advice.  *Id.* at ¶ 35.  Thus, concluded Judge Dailey, at a minimum, the plea

5

agreement should have placed Alvarado Hinojos on notice "that counsel's advice may need to be subjected to further scrutiny" and investigation, and that, if appropriate, a motion seeking postconviction relief may need to be filed within the applicable limitations period. *Id.*

¶10 The prosecution petitioned for certiorari review, and we granted the petition.[2]

## II. Analysis

¶11 We start by setting forth the controlling standard of review. We then discuss the time bar in section 16-5-402(1) and the justifiable excuse or excusable neglect exception in section 16-5-402(2)(d). After examining these provisions, we transition to our decision in *People v. Wiedemer*, where we interpreted the subsection (2)(d) exception. 852 P.2d 424, 440–42 (Colo. 1993). We end by applying *Wiedemer* to the facts alleged by Alvarado Hinojos, which we must assume are true, and conclude that, when considered in conjunction with the plea agreement, they would not establish justifiable excuse or excusable neglect. Accordingly, we hold that Alvarado Hinojos is not entitled to a hearing.

---

[2] We granted certiorari to review the following issue:

> Whether the court of appeals erred when it held that a non-citizen defendant's allegation that plea counsel misadvised him of the adverse immigration consequences of a guilty plea was sufficient to warrant a hearing on whether he established justifiable excuse or excusable neglect for the untimely filing of his Crim. P. 35(c) motion.

6

## A. Standard of Review

¶12 Whether the facts alleged, if true, would constitute justifiable excuse or excusable neglect pursuant to section 16-5-402(2)(d) so as to entitle the defendant to a hearing is a question of law. *Close v. People*, 180 P.3d 1015, 1019 (Colo. 2008).[3] Therefore, our review is de novo. *Id.*

## B. Sections 16-5-402(1), (2)(d)

¶13 Section 16-5-402(1) establishes an eighteen-month limitations period to bring a collateral attack against the validity of a misdemeanor conviction. Subsection (2) provides four exceptions to that time bar, one of which is relevant here:[4]

> (d) Where the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect.

Alvarado Hinojos invoked this exception, asserting justifiable excuse or excusable neglect for filing his motion after the limitations period expired.[5]

---

[3] We recognize that our case law articulates the governing standard as both whether the facts alleged, if true, *would* constitute justifiable excuse or excusable neglect and whether the facts alleged, if true, *could* constitute justifiable excuse or excusable neglect. *See, e.g., Close*, 180 P.3d at 1019 (using "would"); *id.* (using "could"). We clarify today that the correct standard is whether the facts alleged, if true, *would* constitute justifiable excuse or excusable neglect. *See Wiedemer*, 852 P.2d at 440 n.15.

[4] The limited number of exceptions reflects the General Assembly's "recognition of the difficulties attending the litigation of stale claims and the potential for frustrating various statutory provisions directed at repeat offenders, former offenders, and habitual offenders." § 16-5-402(2).

[5] Alvarado Hinojos did not file a direct appeal. Therefore, his conviction became final for purposes of subsection (1) in 2007 when the deadline to file a direct appeal expired. *See People v. Hampton*, 876 P.2d 1236, 1239–40 (Colo. 1994). Because Alvarado Hinojos

## C. *People v. Wiedemer*

¶14    In *Wiedemer*, we observed that a defendant who invokes the justifiable excuse or excusable neglect exception in subsection (2)(d) is not required to provide evidentiary support for his allegations. 852 P.2d at 440 n.15. Instead, his motion must allege facts which, if true, would entitle him to relief from the time bar. *Id.* To determine the applicability of this exception, the trial court has to consider "the particular facts of [the] case," mindful of "the overriding concern" under the Due Process Clause that defendants must "have a meaningful opportunity to challenge their convictions." *Close*, 180 P.3d at 1019.

¶15    We have identified a nonexhaustive list of factors that are relevant to the justifiable excuse or excusable neglect exception in subsection (2)(d):

- whether circumstances or outside influences prevented a timely challenge to a conviction;

- the extent to which the defendant, having reason to question the constitutionality of a conviction, timely investigated its validity and took advantage of available avenues of relief;

- whether the defendant had any previous need to challenge a conviction and either knew it was constitutionally infirm or had reason to question its validity;

- whether the defendant had other means of preventing the government's use of a conviction, so that a postconviction challenge was previously unnecessary; and

---

challenges a class-one-misdemeanor conviction, he was required to file any collateral attack within eighteen months of the conviction becoming final.

8

- whether the passage of time affects the prosecution's ability to defend against the challenge.

*Id.* at 1019–20 (citing *Wiedemer*, 852 P.2d at 441–42).

¶16 But the question here is not whether Alvarado Hinojos was justifiably excused in filing his Rule 35(c) motion late or whether any neglect in his failure to file a timely motion is excusable. The question is narrower: Is Alvarado Hinojos entitled to a hearing on the timeliness of his motion?

¶17 *Wiedemer* provides guidance on this point as well. There, we said that "a Crim. P. 35(c) motion must allege facts that if true would establish justifiable excuse or excusable neglect in order to entitle the moving party to a hearing on the applicability of this exception to the time bar of § 16-5-402(1)." *Wiedemer*, 852 P.2d at 440 n.15. Consistent with *Wiedemer*, in *Close*, we determined, as a matter of law, that Close's Rule 35(c) postconviction motion merited a hearing because it "alleged facts which, if true, would establish justifiable excuse or excusable neglect." 180 P.3d at 1022. Thus, whether a defendant who invokes the subsection (2)(d) exception to the applicable time bar is entitled to a hearing will generally depend on the specific factual allegations advanced in his motion.

¶18 However, we now conclude that, while a defendant is not required to provide evidentiary support for his allegations regarding justifiable excuse or excusable neglect, the trial court may rely on the plea agreement or the plea hearing transcript in denying

9

his Rule 35(c) motion without a hearing on timeliness grounds.[6] *Cf. Kazadi v. People*, 2012 CO 73, ¶ 17, 291 P.3d 16, 22 ("A court must hold an evidentiary hearing on a Crim. P. 35(c) motion unless the motion, the files, and the record clearly establish that the allegations in the motion lack merit and do not entitle the defendant to relief."). Hence, when the plea agreement or the plea hearing transcript is submitted, the trial court should consider it in conjunction with the allegations set forth in the Rule 35(c) motion.

¶19 With these principles in mind, we proceed to address Alvarado Hinojos's motion. Our inquiry is whether he alleged facts which, taken at face value and considered in conjunction with the plea agreement, establish justifiable excuse or excusable neglect and therefore entitle him to a hearing on the applicability of the subsection (2)(d) exception.

## D. Application

¶20 Alvarado Hinojos advanced factual allegations related to some of the *Wiedemer* factors. *See Wiedemer*, 852 P.2d at 441–42. He asserted that:

- he received erroneous advice about the immigration consequences of his plea—specifically, his plea counsel informed him that the guilty plea "would not have adverse immigration consequences";

- he accepted the prosecution's plea offer based on plea counsel's advice;

- he consulted an immigration attorney eight years later and only then learned that his guilty plea has immigration consequences;

---

[6] We do not address whether the trial court may rely on any other part of the record (or on any other evidence) to reject without a hearing an assertion related to justifiable excuse or excusable neglect.

- he had no reason to question the validity of his plea counsel's advice until he met with the immigration attorney; and

- his guilty plea bars him from applying for adjustment to his current immigration status, thereby preventing him from lawfully remaining in the United States and rendering him inadmissible into this country.

¶21 The majority of the division concluded that these allegations, if true, establish that Alvarado Hinojos "had no reason to question the validity of his assault conviction until he learned that he had been erroneously advised." *Alvarado Hinojos*, ¶ 21. Further, according to the majority, since plea counsel's advice gave Alvarado Hinojos no reason to question the validity of his conviction, "the alleged facts could also support [the conclusion] that he was prevented from making a timely challenge." *Id.* at ¶ 22. We disagree.

¶22 In granting Alvarado Hinojos relief, the majority appears to have accorded no weight to the plea agreement, choosing instead to focus exclusively on the facts alleged in the Rule 35(c) motion. Were we to adopt that approach, it would render any prehearing legal analysis largely meaningless. All noncitizen defendants untimely challenging a conviction could force the trial court to grant them a hearing by simply advancing the types of factual allegations set forth in Alvarado Hinojos's motion. That the plea agreement or the plea hearing transcript (or both) directly contradict those allegations would be of no consequence; the trial court would still have to hold a hearing. Such an analytical framework would risk improperly opening the floodgates to Rule 35(c) hearings.

11

¶23     Here, the plea agreement expressly alerted Alvarado Hinojos that his guilty plea "may result in deportation and/or exclusion from the United States." As Judge Dailey soundly reasoned in his dissent, this advisement, at a minimum, gave Alvarado Hinojos reason to question the accuracy of his plea counsel's advice regarding the immigration consequences of the plea. *Id.* at ¶ 35 (Dailey, J., dissenting). Consequently, Alvarado Hinojos was on notice that he needed to diligently investigate his counsel's advice and, if appropriate, file a timely motion challenging the validity of his conviction.

¶24     Thus, applying the *Wiedemer* factors, and considering Alvarado Hinojos's factual allegations (which we presume to be true) together with the plea agreement, we conclude that: (1) he had a present need to challenge his conviction, *see People v. Mershon*, 874 P.2d 1025, 1036–37 (Colo. 1994), and the plea agreement gave him a reason to question the validity of his conviction; (2) he failed to diligently investigate the validity of his conviction or to take advantage of available avenues of relief; and (3) circumstances or outside influences did not prevent him from filing a timely challenge. Under these circumstances, we hold that Alvarado Hinojos is not entitled to a hearing.[7]

¶25     There is one other circumstance that causes us pause in this case, though our holding does not hinge on it. Because Alvarado Hinojos's motion does not include the

---

[7] We decline to speculate about why Alvarado Hinojos did not act diligently based on the immigration advisement in the plea agreement or whether he asked plea counsel about the alleged inconsistency between that advisement and counsel's advisement. Instead, we limit our review to the allegations actually advanced by Alvarado Hinojos in his motion, which we assume are true, and the contents of the plea agreement.

12

date when he consulted an immigration attorney, we cannot tell how long he waited thereafter to file his Rule 35(c) motion. While this is not one of the factors we included in the nonexhaustive list in *Wiedemer*, we find it relevant to the analysis. After all, the justifiable excuse or excusable neglect exception was never intended to give defendants who invoke its protection an unfair advantage.

¶26 Having addressed the merits of this appeal, we take a moment to emphasize that the scope of our analysis is quite narrow—it is limited to Rule 35(c) claims in which a noncitizen defendant alleges justifiable excuse or excusable neglect under subsection (2)(d) based on plea counsel's purported failure to fulfill his legal duty to provide proper advice about the immigration consequences of the plea. As Judge Dailey observed in his dissent, neither our court nor any division of the court of appeals has ever held in any other type of ineffective assistance case that "an attorney's affirmative misadvice [can] constitute justifiable excuse or excusable neglect for belatedly filing a Crim. P. 35(c) motion." *Alvarado Hinojos*, ¶ 34 (Dailey, J., dissenting).

¶27 There is a compelling reason why we chart a carefully circumscribed course today related to the immigration consequences of a plea. Changes to the immigration-law landscape "have dramatically raised the stakes of a noncitizen's criminal conviction" and have rendered removal from the country "an integral part—*indeed, sometimes the most important part*—of the penalty that may be imposed" when such a defendant pleads guilty to certain crimes. *Padilla v. Kentucky*, 559 U.S. 356, 364 (2010) (emphasis added).

¶28 Recognizing that it is the courts' responsibility to ensure that no criminal defendant "is left to the 'mercies of incompetent counsel,'" *id.* at 374 (quoting *McMann v.*

13

*Richardson*, 397 U.S. 759, 771 (1970)), the U.S. Supreme Court explained in *Padilla* that "[t]he weight of prevailing professional norms supports the view that [constitutionally effective] counsel must advise her client regarding the risk of" removal from the country, *id.* at 367. *See also People v. Pozo*, 746 P.2d 523, 529 (Colo. 1987) ("When defense counsel in a criminal case is aware that his client is an alien, he may reasonably be required to investigate relevant immigration law" because "thorough knowledge of fundamental [immigration] principles" may have a "significant impact on a client's decisions concerning plea negotiations and defense strategies."). "The severity of deportation— 'the equivalent of banishment or exile'— . . . underscores how critical it is for counsel to inform her noncitizen client that he faces a risk of deportation." *Padilla*, 559 U.S. at 373–74 (quoting *Delgadillo v. Carmichael*, 332 U.S. 388, 390–91 (1947)). The Sixth Amendment can require nothing less of an attorney representing a noncitizen criminal defendant than "to provide advice about the risk of deportation arising from a guilty plea." *Chaidez v. United States*, 568 U.S. 342, 344 (2013).

¶29 Characterizing deportation as "uniquely difficult to classify as either a direct or a collateral consequence" of a criminal conviction, *Padilla*, 559 U.S. at 366, the U.S. Supreme Court has placed counsel's obligation to inform a "client whether his plea carries a risk of deportation," *id.* at 374, in virtually a class by itself. We see no reason why this same consideration should not be taken into account in assessing the entitlement of a criminal defendant to a hearing concerning a claim of justifiable excuse or excusable neglect for failing to challenge the validity of a conviction within the statutorily prescribed period.

¶30    In this case, though, even accepting at face value the allegations advanced by Alvarado Hinojos in his motion, he is not entitled to a hearing on the applicability of the justifiable excuse or excusable neglect exception. The plea agreement, at a minimum, gave Alvarado Hinojos reason to question and investigate that advice.

¶31    In sum, since the plea agreement was submitted to the trial court, Alvarado Hinojos's factual allegations must be considered in conjunction with it. Doing so leads us to conclude that Alvarado Hinojos's motion does not merit a hearing on the applicability of the subsection (2)(d) exception.

### III. Conclusion

¶32    We conclude that Alvarado Hinojos's postconviction motion does not merit a hearing on the applicability of the justifiable excuse or excusable neglect exception set forth in subsection (2)(d). Accordingly, we reverse the judgment of the division and remand for further proceedings consistent with this opinion.

**JUSTICE GABRIEL** dissents and **JUSTICE HOOD** and **JUSTICE HART** join in the dissent.

JUSTICE GABRIEL, dissenting.

¶33 This case presents a narrow issue: Does a non-citizen defendant's allegation that plea counsel misadvised him of the immigration consequences of his guilty plea suffice to warrant a hearing as to whether justifiable excuse or excusable neglect should excuse the defendant's belated filing of a Crim. P. 35(c) claim alleging the ineffective assistance of counsel. Because I believe that Alvarado Hinojos's allegations here were sufficient to warrant a hearing, and because the majority's contrary view decides the very fact questions on which Alvarado Hinojos seeks to be heard and imposes on him an unrealistic duty to second-guess his counsel's advice (even though counsel was legally obligated to give him correct advice), I respectfully dissent.

## I. Factual Background

¶34 The facts that Alvarado Hinojos alleged in his petition and that we must accept as true are undisputed.

¶35 Alvarado Hinojos, a non-United States citizen, pleaded guilty to menacing with a deadly weapon and third-degree assault. He stipulated to a deferred judgment on the menacing count and a probationary sentence on the assault count. The matter now before us concerns only the assault charge.

¶36 At the time of Alvarado Hinojos's guilty plea, his plea paperwork advised him that his plea "may result in deportation and/or exclusion from the United States or denial of naturalization in the United States." His plea counsel, however, advised him that his guilty plea "would not have adverse immigration consequences."

1

¶37    Alvarado Hinojos successfully completed both the terms of his deferred judgment and his probationary sentence. The trial court thus dismissed the menacing count and terminated the probationary sentence on the assault charge.

¶38    Approximately six years later, Alvarado Hinojos filed a Crim. P. 35(c) motion, in which, as pertinent here, he collaterally attacked his third-degree assault conviction. In this motion, Alvarado Hinojos alleged that he had received ineffective assistance from his plea counsel because counsel had incorrectly advised him that his guilty plea "would not have adverse immigration consequences." Specifically, he alleged that (1) he accepted the prosecution's plea offer based on plea counsel's advice; (2) he consulted an immigration attorney eight years after he entered his plea and only then learned that the plea, in fact, had immigration consequences; (3) he had no reason to question the validity of his plea counsel's advice until he met with the immigration attorney; and (4) his guilty plea bars him from applying for adjustment to his lawful permanent resident status and thus prevents him from remaining in the United States and renders him inadmissible here. Alvarado Hinojos acknowledged that he had filed his motion beyond the applicable eighteen-month deadline set forth in section 16-5-402(1), C.R.S. (2018), but he asserted that justifiable excuse or excusable neglect should excuse his late filing.

¶39    The postconviction court summarily denied Alvarado Hinojos's claim, finding that it was filed late and without justifiable excuse or excusable neglect. Alvarado Hinojos appealed, and in a split, unpublished decision, a division of the court of appeals reversed, concluding that Alvarado Hinojos's allegations, if true, could support a finding of justifiable excuse or excusable neglect. *People v. Alvarado Hinojos*, No. 15CA1780,

2

¶¶ 25–26 (Colo. App. Sept. 7, 2017). Accordingly, the division remanded the case for a hearing. *Id.* at ¶ 26.

¶40 The People then sought review, and we granted certiorari.

## II. Analysis

¶41 I begin by setting forth the applicable law. I then apply the pertinent principles to the facts before us.

## A. Applicable Law

¶42 Section 16-5-402(1) requires a defendant to bring a collateral attack on the validity of a misdemeanor conviction within eighteen months.

¶43 Section 16-5-402(2)(d) provides an exception to this time bar and allows an otherwise untimely motion to proceed "[w]here the court hearing the collateral attack finds that the failure to seek relief within the applicable time period was the result of circumstances amounting to justifiable excuse or excusable neglect."

¶44 To be entitled to a hearing on the applicability of this exception, a defendant need not provide evidentiary support for his or her allegations. *People v. Wiedemer*, 852 P.2d 424, 440 n.15 (Colo. 1993). Instead, the defendant need only allege facts that, if true, would establish justifiable excuse or excusable neglect. *Id.*

¶45 In assessing whether a defendant has established justifiable excuse or excusable neglect, courts consider, among other things, (1) the existence of circumstances or outside influences that prevented the defendant from challenging his or her prior conviction; (2) the extent to which a defendant who had reason to question the constitutionality of a conviction investigated its validity and availed himself or herself of avenues of relief;

3

(3) whether the defendant had any previous need to challenge his or her conviction; (4) whether the defendant either knew that his or her conviction was constitutionally infirm or had reason to question its validity; (5) whether he or she had other means of preventing the government's use of the conviction so that a postconviction challenge was previously unnecessary; and (6) the time that elapsed between the date of conviction and the defendant's challenge and the effect that such passage of time may have on the prosecution's ability to defend against the challenge. *Id.* at 441–42.

¶46 In addition, as to the merits, in discussing counsel's duty to advise a defendant of the immigration consequences of a guilty plea, the Supreme Court has stated:

> Immigration law can be complex, and it is a legal specialty of its own. . . . There will, therefore, undoubtedly be numerous situations in which the deportation consequences of a particular plea are unclear or uncertain. . . . When the law is not succinct and straightforward . . . , a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear, . . . the duty to give correct advice is equally clear.

*Padilla v. Kentucky*, 559 U.S. 356, 369 (2010) (footnote omitted).

## B. Alvarado Hinojos's Entitlement to a Hearing

¶47 Applying the foregoing principles here, I believe that Alvarado Hinojos has alleged facts that, if true, would establish justifiable excuse or excusable neglect. Accordingly, I believe that the division below correctly concluded that he was entitled to a hearing on that issue.

¶48 As noted above, Alvarado Hinojos alleged, as pertinent here, that (1) his plea counsel had advised him that his guilty plea "would not have adverse immigration

4

consequences"; (2) he accepted the prosecution's plea offer based on counsel's advice; (3) he consulted an immigration attorney eight years after he entered his plea and only then learned that the plea, in fact, had immigration consequences; (4) he had no reason to question the validity of his plea counsel's advice before that time; and (5) his guilty plea bars him from applying for adjustment to his lawful permanent resident status and thus prevents him from remaining in the United States and renders him inadmissible here.

¶49      In my view, these allegations more than suffice to establish a viable claim for justifiable excuse or excusable neglect.  If true, these allegations show that Alvarado Hinojos's plea counsel misadvised him of the immigration consequences of his guilty plea and that his reliance on that faulty advice explains why he did not file his postconviction motion on a timely basis.  Moreover, I am unwilling to say that, as a matter of law, Alvarado Hinojos's plea paperwork establishes that he had a duty to second-guess counsel's advice and that his not doing so defeats any claim of justifiable excuse or excusable neglect.  For present purposes, and subject to contrary proof at a hearing, I believe that a party like Alvarado Hinojos was entitled to rely on his counsel's advice. This is particularly true in the present context, in which counsel had a legal obligation to advise Alvarado Hinojos correctly as to the immigration consequences of his plea.  *See Padilla*, 559 U.S. at 369.

¶50      In concluding otherwise, the majority opines that Alvarado Hinojos is not entitled to a hearing in this case because his plea paperwork gave him reason to question the accuracy of his plea counsel's advice.  Maj. op. ¶ 2.  For several reasons, I disagree.

5

¶51    First, in reaching this conclusion, the majority essentially determines, as a matter of law, that Alvarado Hinojos had a reason to question the validity of his plea counsel's advice. In my view, however, this is a factual issue to be explored at a hearing. The evidence may show, for example, that Alvarado Hinojos in fact questioned his counsel about the plea paperwork and that it was in this context that counsel advised him that the plea would not have adverse immigration consequences (it is not difficult to imagine counsel responding that the plea paperwork was just required boilerplate and that the client should not be concerned). Were these the facts, it may well be that Alvarado Hinojos reasonably did not inquire further. Conversely, it may turn out that Alvarado Hinojos received the plea paperwork *after* his counsel advised him of the immigration consequences of his plea, that he noted the discrepancy between counsel's advice and the paperwork, and that he nonetheless chose not to inquire further. Such facts could undermine a claim of justifiable excuse or excusable neglect. Either way, I do not believe that we can say, as a matter of law, that Alvarado Hinojos had a reason to question the accuracy of his counsel's advice.

¶52    Second, the majority's conclusion strikes me as unrealistic. Parties in these cases (as in many cases) often have little or no understanding of the law, and they naturally will rely on their counsel to provide proper and correct legal advice, particularly with respect to legal papers that the parties are asked to sign. This is especially true in the present context, in which plea counsel was legally obligated to provide "correct advice" regarding the immigration consequences of Alvarado Hinojos's plea. *See Padilla*, 559 U.S. at 369. In these circumstances, I would not impose on a party like Alvarado Hinojos a

6

duty, as a matter of law, to second-guess his counsel. Rather, the question of whether he had reason to question his counsel's advice is a factual one that I believe can be decided only after proper evidentiary development at a hearing.

¶53 I likewise am unpersuaded by the People's contentions that a defendant has a present need to make a timely postconviction claim as soon as the judgment enters and that under *People v. Mershon*, 874 P.2d 1025, 1036–37 (Colo. 1994), subsequent events can never establish a present need and are irrelevant to justifiable excuse or excusable neglect.

¶54 As an initial matter, I note that Alvarado Hinojos has never argued that the lack of a present need justified his late filing here. Accordingly, the People's argument is inapposite.

¶55 More important, the People's assertion that Alvarado Hinojos had a present need from the moment a judgment entered is so broad that it would swallow the statutory justifiable excuse/excusable neglect exception. Specifically, if present need is dispositive and if it exists from the moment a judgment enters, then in every case, a defendant would need to file a Crim. P. 35(c) motion within the statutory time limits, and justifiable excuse or excusable neglect can never apply to excuse a late filing. This analysis renders section 16-5-402(2)(d) meaningless, and we obviously cannot adopt such a construction.

¶56 Finally, I do not agree with the People's assertion that allowing Alvarado Hinojos a hearing in this case would establish a rule that would allow future defendants to extend indefinitely their time to file a Crim. P. 35(c) motion merely by failing to inquire or adopting a practice of willful ignorance. The evidence in such a case may show that a defendant's failure to inquire and willful ignorance were unreasonable, thereby defeating

7

a claim of justifiable excuse or excusable neglect. Again, to me, this is a factual question to be determined at a hearing, and I have every confidence that a district court judge can act to avoid the kind of abuse that the People hypothesize.

¶57 For these reasons, I would conclude that Alvarado Hinojos's motion alleged facts that, if true, would entitle him to relief from the applicable time bar, and I would therefore conclude that he was entitled to a hearing on his postconviction motion.

### III. Conclusion

¶58 In support of his claim of justifiable excuse or excusable neglect for his untimely Crim. P. 35(c) motion, Alvarado Hinojos alleged that his plea counsel had advised him that his guilty plea "would not have adverse immigration consequences," that he relied on this advice, and that he had no reason to question it until he met with an immigration attorney years later and learned, for the first time, that the advice was wrong. In my view, these allegations more than suffice to establish a viable claim of justifiable excuse or excusable neglect so as to entitle Alvarado Hinojos to a hearing on the question.

¶59 Accordingly, I would affirm the judgment of the division below, and I therefore respectfully dissent.

I am authorized to state that JUSTICE HOOD and JUSTICE HART join in this dissent.

8