Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's
homepage at http://www.courts.state.co.us.  Opinions are also
posted on the Colorado Bar Association's homepage at
http://www.cobar.org.

ADVANCE SHEET HEADNOTE
February 10, 2020

**2020 CO 8**

**No. 17SC815, *Juarez v. People*—Criminal Law—Plea—Effective Assistance—Immigration**

Juarez petitioned for review of the court of appeals' judgment affirming the denial of his motion for postconviction relief.  With regard to his challenge to the effectiveness of his counsel, the district court found both that defense counsel adequately advised his client concerning the immigration consequences of his plea of guilty to misdemeanor drug possession and that, in any event, there was no reasonable probability Juarez would not have taken the plea.  The intermediate appellate court similarly found that counsel's advice fell within the range of competence demanded of attorneys in criminal cases, but as a result of that finding, the appellate court considered it unnecessary to address the question whether counsel's performance prejudiced Juarez.

The supreme court affirmed, ruling that because Juarez conceded he was advised and understood that the misdemeanor offense to which he pleaded guilty would make him "deportable," defense counsel's advice concerning the

immigration consequences of his plea correctly informed him of the controlling law and therefore did not fall below the objective standard of reasonableness required for effective assistance concerning immigration advice.

# The Supreme Court of the State of Colorado

2 East 14th Avenue • Denver, Colorado 80203

---

## 2020 CO 8

---

### Supreme Court Case No. 17SC815
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 13CA1296

---

### Petitioner:

Alfredo Juarez,

v.

### Respondent:

The People of the State of Colorado.

---

### Judgment Affirmed
*en banc*
February 10, 2020

---

**Attorneys for Petitioner:**
Megan A. Ring, Public Defender
John Plimpton, Deputy Public Defender
  *Denver, Colorado*

**Attorneys for Respondent:**
Philip J. Weiser, Attorney General
Carmen Moraleda, Senior Assistant Attorney General
  *Denver, Colorado*

**CHIEF JUSTICE COATS** delivered the Opinion of the Court.
**JUSTICE GABRIEL** concurs in the judgment, and **JUSTICE MÁRQUEZ** joins in the concurrence in the judgment.

¶1 Juarez petitioned for review of the court of appeals' judgment affirming the denial of his motion for postconviction relief. With regard to his challenge to the effectiveness of his counsel, the district court found both that defense counsel adequately advised his client concerning the immigration consequences of his plea of guilty to misdemeanor drug possession and that, in any event, there was no reasonable probability Juarez would not have taken the plea. The intermediate appellate court similarly found that counsel's advice fell within the range of competence demanded of attorneys in criminal cases, but as a result of that finding, the appellate court considered it unnecessary to address the question whether counsel's performance prejudiced Juarez.

¶2 Because Juarez conceded he was advised and understood that the misdemeanor offense to which he pleaded guilty would make him "deportable," defense counsel's advice concerning the immigration consequences of his plea correctly informed him of the controlling law and therefore did not fall below the objective standard of reasonableness required for effective assistance concerning immigration advice. The judgment of the court of appeals is therefore affirmed.

**I.**

¶3 In April 2012, Alfredo Juarez pleaded guilty to one class 1 misdemeanor count of possessing a schedule V controlled substance, in exchange for the dismissal of a charge of felony possession. As stipulated in the plea agreement, he

received a sentence to two years of drug court probation. At the time of his offense and plea, the defendant was a citizen of Mexico and a lawful permanent resident of the United States.

¶4 A month after his sentencing, the defendant violated the conditions of his probation, received a suspended two-day jail sentence, and two weeks later, after violating the conditions of that suspension, served those two days in jail. After he received an additional three-day jail sentence for again violating his probation, federal Immigration Customs and Enforcement ("ICE") officers began removal proceedings. The defendant was eventually deported to Mexico.

¶5 In October 2012 and January 2013, the defendant filed motions for postconviction relief, challenging the effectiveness of his plea counsel's representation and, as a result, the constitutional validity of his guilty plea. Over a period of three days, the district court heard these motions, including the testimony of the defendant, taken by video over the internet; the testimony of his plea counsel; and the testimony of an immigration attorney retained by him in 2011, prior to his acceptance of the plea agreement. Following that hearing, the court made findings and conclusions and denied the motions. The hearing revealed the following pertinent facts.

¶6 The defendant was charged with a felony following the discovery of cocaine on his person. After nearly a year of continuances, granted for the specific purpose

of allowing him to address potential immigration issues prior to accepting any plea agreement, the defendant finally agreed to plead guilty to class 1 misdemeanor possession of a controlled substance in exchange for the dismissal of his felony charge. Prior to the court's acceptance of the plea, defense counsel made a record that he had spoken to two immigration attorneys, advised the defendant to contact an immigration attorney himself after providing him with several names, and clearly informed the defendant that the misdemeanor offered by the prosecution was the equivalent of a felony under federal immigration law.

¶7 At the postconviction hearing, defense counsel further testified that on a call with him and the defendant, an immigration attorney explained that the plea offer was not acceptable because it would likely get him deported, and that the immigration attorney followed up the call with a letter, reiterating that the proposed plea would probably result in deportation. Counsel further testified that he consulted another immigration attorney who gave largely the same advice, and that he communicated this response to the defendant, who understood that deportation was the probable outcome of accepting the plea.

¶8 The defendant himself also testified that in the process of renewing his lawful permanent resident status, his own immigration counsel had informed him that the plea could make him deportable. The defendant further testified that he spoke to a second immigration attorney, who also informed him that the plea

4

"would" make him deportable. The defendant specifically conceded that although no one told him that accepting the agreement and pleading guilty would "automatically" make him deportable or that he actually "was going to get deported," nevertheless he understood that pleading guilty to the misdemeanor "would" make him "deportable."

¶9 The district court reasoned that any distinction between being automatically or mandatorily deportable and simply being deportable was illusory and in fact that being so advised would have created a misleading impression of the probability of deportation. Similarly, it found that the defendant regretted his plea only after he violated his probation and was deported and therefore there was no merit in his assertion that had he been told he would "automatically" be deported he would not have accepted the plea agreement. After agreeing that the defendant was adequately advised, the court of appeals found it unnecessary to opine concerning the likelihood that but for inadequate advice, the defendant would have rejected the plea offer.

## II.

¶10 For the waiver of fundamental rights inherent in any guilty plea to be effective, a pleading defendant must understand, among other things, the direct consequences of his plea. *Brady v. United States*, 397 U.S. 742, 755 (1970) (for a guilty plea to be voluntary it must, among other things, be entered by one "fully

5

aware of the direct consequences"); *People v. Birdsong*, 958 P.2d 1124, 1128 (Colo. 1998) ("[T]he trial court must advise the defendant of the direct consequences of the conviction to satisfy the due process concerns that a plea be made knowingly and with a full understanding of the consequences thereof.").  In addition, before pleading guilty to a crime, a defendant is entitled to advice from his counsel that falls within the range of competence demanded of attorneys in criminal cases. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985) (holding that two-part test from *Strickland v. Washington*, 466 U.S. 668 (1984), applies to challenges to guilty pleas based on ineffective assistance of counsel).  Although it appears well settled that a trial court is not required to advise a defendant sua sponte of potential federal deportation consequences, *People v. Pozo*, 746 P.2d 523, 526 (Colo. 1987), defense counsel's obligations and the adequacy of his advice concerning the deportation consequences of his client's acceptance of a guilty plea have long been the subject of debate in both state and federal law, *compare People v. Soriano*, 240 Cal. Rptr. 328, 333–36 (Cal. Ct. App. 1987) (determining that the defendant was denied effective assistance of counsel because he was not adequately advised of the immigration consequences of his plea), *and People v. Pozo*, 712 P.2d 1044, 1047 (Colo. App. 1985) (determining that the defendant was denied effective assistance where defense attorney did not research and advise the defendant with respect to deportation consequences of guilty plea), *rev'd*, 746 P.2d 523 (Colo. 1987), *and People v.*

6

*Padilla,* 502 N.E.2d 1182, 1186 (Ill. App. Ct. 1986) (determining that failure to advise of deportation consequences constitutes ineffective assistance of counsel), *with Tafoya v. State,* 500 P.2d 247, 252 (Alaska 1972) (concluding that alien defendant received effective assistance of counsel despite counsel's failure to advise of deportation consequences), *and State v. Ginebra,* 511 So. 2d 960, 962 (Fla. 1987) (determining that counsel's failure to advise client of deportation consequence does not constitute ineffective assistance of counsel), *superseded by rule as stated in State v. De Abreu*, 613 So. 2d 453, 453 (Fla. 1993).

¶11    More than thirty years ago, in *Pozo*, this court addressed a challenge to the effectiveness of counsel for failing to advise of possible deportation consequences, but unlike the intermediate appellate court considering the question before us, we expressly declined to determine whether any such duty existed.  746 P.2d at 527. Instead, relying heavily on then-existing federal law that permitted a sentencing court to prevent deportation by recommending against it, we found that the potential deportation consequences of guilty pleas in criminal proceedings brought against alien defendants were material to critical phases of such proceedings.  *Id.* at 528–29.  Rather than imposing a duty on counsel to advise specifically of deportation consequences, we relied on the more fundamental principle that attorneys must inform themselves of material legal principles that may significantly impact the particular circumstances of their clients.  *Id.* at

7

529–30. In the absence of an existing adequate record, we therefore remanded for a determination whether defense counsel had reason to know of Pozo's alien status but nevertheless failed to conduct appropriate research into federal immigration law. *Id.*

¶12 Nearly a quarter century later, emphasizing that the "judicial recommendation against deportation," or "JRAD," and the Attorney General's authority to grant discretionary relief from deportation had both been eliminated from federal immigration law, the United States Supreme Court characterized that law as now making removal "nearly an automatic result" and deportation as now constituting an integral part of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes. *Padilla v. Kentucky*, 559 U.S. 356, 363–64, 366 (2010). Expressly finding the collateral versus direct distinction ill-suited to evaluating a *Strickland* claim concerning the specific risk of deportation, and noting that in any event the Supreme Court had never applied the distinction between direct and collateral consequences to define the scope of constitutionally reasonable professional assistance of counsel, the Court concluded simply that advice regarding the unique consequence of deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel. *Id.* at 365–66.

¶13 After considering various sources of professional responsibility, the Court ultimately articulated counsel's duty with regard to the first, or objective-

standard-of-reasonableness, prong of the *Strickland* test in the context of this unique kind of penalty, holding "that counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374. Acknowledging that immigration law can be complex and that there will undoubtedly be cases in which the deportation consequences of a particular plea will be unclear or uncertain, the Court held that when "the law is not succinct and straightforward," a defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. *Id.* at 369. On the other hand, when the deportation consequence is truly clear, the duty to give correct advice is equally clear. *Id.* In *Padilla* itself, where federal law classified the defendant's particular crime as "deportable," the Court considered "the terms of the relevant immigration statute [to be] succinct, clear, and explicit in defining the removal consequence for Padilla's conviction." *Id.* at 368.

### III.

¶14 Whether or not our rationale in *Pozo* retains any force after the elimination of judicial discretion as a means of affecting deportation, there can be little question that counsel in the instant case went to substantial lengths to educate himself and ensure that his client was fully informed of the immigration consequences of taking the plea in question. The defendant's counsel not only secured a number of continuances for the very purpose of ensuring that his client

9

was advised of and understood these consequences, but he also had the defendant advised by an immigration attorney in his presence, and he personally advised the defendant to seek further consultation with an immigration specialist, after providing the defendant with a list of such specialists.

¶15 From the record of the providency hearing, as well as the testimony of defense counsel, the testimony of a separate immigration attorney who advised him, and his own admissions, it was undisputed that the defendant was advised and understood that the misdemeanor drug offense offered by the prosecution would be treated as a felony conviction for purposes of federal immigration law; that he could not afford to take the plea if he wanted to avoid deportation; and that by taking the plea agreement he would in fact be made deportable. The defendant has never asserted that he was affirmatively misinformed that he need not worry about his immigration status, as was the defendant in *Padilla*, 559 U.S. at 359, or that he was not advised that taking the plea in question would make him deportable, just as would a plea to a felony. He testified only that he was never advised that his plea would make him "automatically" deportable or that he actually "was going to get deported."

¶16 The defendant now asserts that merely being advised that taking the plea in question would make him deportable according to federal immigration law was insufficient to satisfy the duty imposed upon defense counsel in *Padilla* to provide

10

advice regarding the risk of deportation. Relying on specific terms used by the Court in criticizing defense counsel's erroneous advice in *Padilla*, the defendant argues instead that adequate advice required counsel's use of the terms "automatic deportation" and "presumptively mandatory deportation," and that advising him he would probably be deported was in fact misleading.

¶17 In articulating its holding ("we now hold"), the *Padilla* Court commanded that "counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 374. Drawing a distinction between immigration law that *is not* succinct and straightforward in defining the removal consequence and immigration law that *is* succinct and straightforward in defining the removal consequence, the Court imposed a more limited duty of advice on defense counsel with regard to the former than the latter. *See id.* at 369. When "the law" is not succinct and straightforward, counsel's duty in this regard is limited to advising a noncitizen client that pending charges may carry a risk of adverse immigration consequences, but when the deportation consequence is truly clear, counsel has a duty to give correct advice. *Id.*

¶18 The "correct advice" that counsel has a duty to give therefore necessarily refers to a correct explanation of "the law." The immigration law at issue here is the very law that the Supreme Court in *Padilla* found to be "truly clear," for the reason that it specified the deportation consequence for conviction of the crime to

which Padilla was pleading guilty, by one of Padilla's immigration status.  That consequence was that such an individual would be "deportable."  *See* 8 U.S.C. § 1227(a)(2)(B)(i) (2018) ("Any alien who at any time after admission has been convicted of a violation of . . . any law or regulation of a State, the United States, or a foreign country relating to a controlled substance . . . other than a single offense involving possession for one's own use of 30 grams or less of marijuana, is *deportable*." (emphasis added)).  The "correct advice" concerning the legal consequence of the defendant's plea required in the instant case, just as it was in *Padilla*, was that the alien defendant would, in the language of the statute, be "deportable." *Id.*; s*ee also State v. Sanmartin Prado*, 141 A.3d 99, 126, 128 (Md. 2016) (holding defense counsel provided correct advice under *Padilla* by informing the defendant that his child abuse offense is "deportable" because 8 U.S.C. § 1227(a)(2)(E)(i) defines it as such).  That is precisely the advice the defendant in the instant case was given.

¶19    The term "presumptively mandatory" nowhere appears in the Court's opinion as a required advisement or as a description of the "correct advice" required of clear statutes, but rather in an explanation why the advice given by Padilla's counsel was incorrect.  *See Padilla*, 559 U.S. at 368–69.  As the Court indicated in its opinion, it was not hard to find counsel's advice deficient for three reasons: the consequences of Padilla's plea could easily be determined from

12

reading the removal statute, his deportation was presumptively mandatory, and his counsel's advice was incorrect. *Id.* Similarly, the Court never used the phrases "automatic deportation" or "automatically deportable" in describing a required advisement or "correct advice." "Subject to automatic deportation" appears only in an introductory passage of the opinion generally summarizing the Court's conclusion that defense counsel's advice to the effect that the defendant need not worry about his immigration status was deficient and that the question whether the defendant would be entitled to relief for ineffective assistance of counsel would therefore depend upon the second or prejudice prong of the *Strickland* standard, a matter the Court for procedural reasons did not propose to address. *Id.* at 360. The Court used the phrase "automatically deportable" only in the portion of its opinion describing historical developments in federal immigration law. *Id.* at 362.

¶20     In fact, the *Padilla* opinion does not again use the term "automatic deportation" or suggest in the body of the analysis any requirement for counsel to predict the likelihood that the law will actually be enforced and the defendant will actually be deported. Besides undoubtedly being an accurate prediction, the assessment by the defendant's counsel, as well as that of the other immigration specialists advising him, that if he took the offered plea agreement he would probably be deported did not in any way detract from or minimize the "correct advice," which the defendant also received, that the legal consequence of his

13

accepting the agreement would be to make him deportable. Quite the contrary, being advised that one would probably be deported arguably implies that, as a matter of law, he would at the very least be deportable.

¶21 Whether such an advisement of probable consequences standing alone, however, could demonstrate reasonable professional competence; whether, even if so, prejudice could be established in the face of ignoring such an advisement; or whether even correct advice concerning the legal consequence of such a plea might nevertheless be deficient in light of other, contradictory advisements, are all questions we need not answer. In the case before us, it is enough that the defendant was correctly advised concerning both the legal consequence and the practical implications of his plea.

## IV.

¶22 Because Juarez conceded he was advised and understood that the misdemeanor offense to which he pleaded guilty would make him "deportable," defense counsel's advice concerning the immigration consequences of his plea correctly informed him of the controlling law and therefore did not fall below the objective standard of reasonableness required for effective assistance concerning immigration advice. The judgment of the court of appeals is therefore affirmed.

**JUSTICE GABRIEL** concurs in the judgment, and **JUSTICE MÁRQUEZ** joins in the concurrence in the judgment.

JUSTICE GABRIEL, concurring in the judgment.

¶23    The majority concludes that plea counsel's advice to defendant Alfredo Juarez regarding the immigration consequences of Juarez's guilty plea to a class 1 misdemeanor drug possession count was correct and did not fall below the objective standard of reasonableness required for effective assistance concerning immigration advice.  Maj. op. ¶ 22.  In my view, however, counsel's advice was deficient under the standards set forth in *Padilla v. Kentucky*, 559 U.S. 356, 369 (2010), and *People v. Pozo*, 746 P.2d 523, 529 (Colo. 1987), because it did not correctly convey the clear statutory deportation consequences of Juarez's guilty plea.  Nonetheless, like the majority, I would affirm the judgment here because the record does not support Juarez's contention that but for counsel's deficient advice, he would not have pleaded guilty and instead would have proceeded to trial.

¶24    Accordingly, I respectfully concur in the judgment only.

## I. Factual Background

¶25    No one disputes that under the applicable immigration statutes, Juarez's guilty plea in this case rendered him automatically deportable.  *See Padilla*, 559 U.S. at 363–64, 366 (noting that under contemporary law, if a noncitizen commits a removable offense, then his or her removal is "practically inevitable" and that "recent changes in our immigration law have made removal nearly an automatic result for a broad class of noncitizen offenders"); *United States v. Yansane*,

1

370 F. Supp. 3d 580, 586 (D. Md. 2019) (construing the immigration provision at issue here as "automatically" rendering deportable defendants who are convicted of any federal law or regulation relating to controlled substances).[1]  Indeed, the majority itself acknowledges the Supreme Court's view that, under prevailing immigration law, removal is now "nearly an automatic result" for noncitizen offenders like Juarez, although the majority goes to some length to try to minimize the import of the Court's statement in that regard.  Maj. op. ¶¶ 12, 19 (citing *Padilla*, 559 U.S. at 366).

¶26    Plea counsel, however, did not advise Juarez of this applicable law.  To the contrary, counsel appears to have advised Juarez only that (1) his plea "*could* make [him] deportable"; (2) if he took the plea offer, he would *probably* be deported; or (3) if he took the plea offer, it "*very likely* [would] result in either deportation or some type of exclusion from the United States."  (Emphases added.)  In addition, when, prior to accepting the plea offer, Juarez expressed his belief that a felony might be viewed by immigration authorities as worse than a misdemeanor, counsel did not correct Juarez's misimpression, even though counsel knew that,

---

[1] Although current law has changed the terminology from "deportation" to "removal," because counsel in this case advised Juarez in terms of "deportation," to avoid confusion, I, too, will generally use that term.

from an immigration standpoint, Juarez's plea to the misdemeanor would put him in the same position as if he had been convicted of a felony. Instead, counsel told Juarez, "[T]here's a possibility over the next several years that maybe the law might change, and if you're looking at a misdemeanor versus a felony, might that somehow benefit you [sic]."

¶27 The matter proceeded to the providency hearing, and when the court asked Juarez if he understood that his plea *could* affect his immigration status, Juarez replied, "Yeah," but indicated that he was willing to proceed because there was nothing else that he could do. Specifically, Juarez made clear that he understood that his counsel had tried to get a plea deal that would have avoided the possibility of deportation but that the prosecutor would not make such an offer. Juarez thus told the court, "[W]e got to go with what . . . we can do now," and although an immigration lawyer had told Juarez that the plea offer was unacceptable, Juarez pleaded guilty.

## II. Analysis

¶28 I begin by discussing the standards set forth in *Padilla* and *Pozo*. I then address why I believe that plea counsel's advice in this case was deficient. Last, I turn to the question of prejudice, and I explain why I do not believe that counsel's deficient advice prejudiced Juarez on the facts presented here.

3

## A. *Padilla* **and** *Pozo*

¶29 Addressing counsel's obligations in a case like this, in *Padilla*, 559 U.S. at 368–69, the Supreme Court concluded that when "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction," counsel must give "correct advice." In contrast, when the law is not succinct and straightforward, "a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." *Id.* at 369.

¶30 In so concluding, the Supreme Court reached the same conclusion that we had reached some twenty-three years earlier in *Pozo*, 746 P.2d at 529–30. *See People v. Hinojos*, 2019 CO 60, ¶ 28, 444 P.3d 755, 761-62 (citing *Pozo* immediately after describing defense counsel's obligations under *Padilla*); *People v. Chavez-Torres*, 2019 CO 59, ¶ 26, 442 P.3d 843, 850 (same); *Kazadi v. People*, 2012 CO 73, ¶ 31, 291 P.3d 16, 25 (Bender, C.J., dissenting) (equating the obligations of defense counsel set forth in *Pozo*, 746 P.2d at 529, with those set forth in *Padilla*, 559 U.S. at 374).

¶31 Specifically, in *Pozo,* 746 P.2d at 529, we made clear that attorneys practicing in Colorado who knew or had sufficient information to form a reasonable belief that their client was a noncitizen had a duty to "investigate relevant immigration law." This duty, we said, stems "from the . . . fundamental principle that attorneys

4

must inform themselves of material legal principles that may significantly impact the particular circumstances of their clients." *Id.* Moreover, we noted that in cases involving noncitizen criminal defendants, "thorough knowledge of fundamental principles of deportation law may have significant impact on a client's decisions concerning plea negotiations and defense strategies." *Id.* Accordingly, we remanded the case to determine, in light of the foregoing principles, whether counsel's failure to advise Pozo of the immigration consequences of his plea constituted constitutionally ineffective assistance of counsel. *Id.* at 529–30.

## B. Deficient Conduct

¶32 Applying the foregoing principles here, I believe that plea counsel's conduct fell below the constitutionally mandated standards set forth in *Padilla* and *Pozo*.

¶33 As noted above, in *Padilla*, 559 U.S. at 368–69, the Supreme Court concluded that when "the terms of the relevant immigration statute are succinct, clear, and explicit in defining the removal consequence for [the defendant's] conviction," counsel must give "correct advice." Here, as in *Padilla*, the consequences of Juarez's plea could "easily be determined from reading the removal statute." *Id.* at 369. Specifically, pursuant to applicable law, his plea made him automatically deportable, such that his deportation was, in the words of the *Padilla* Court, "practically inevitable." *See id.* at 363–64, 366; *Yansane*, 370 F. Supp. 3d at 586.

5

¶34    Counsel, however, did not advise Juarez of this applicable law.  Instead, he told Juarez only that (1) his plea "*could* make [him] deportable"; (2) if he took the plea offer, he would *probably* be deported; or (3) if he took the plea offer, it "*very likely* [would] result in either deportation or some type of exclusion from the United States."  (Emphases added.)  Moreover, when Juarez expressed his belief that a felony might be viewed by immigration authorities as worse than a misdemeanor, counsel did not correct Juarez's misimpression, even though counsel knew that, from an immigration standpoint, Juarez's plea to the misdemeanor would put him in the same position as if he had been convicted of a felony.  Instead, counsel gave Juarez false hope that the law might change and that a misdemeanor might be more beneficial than a felony.

¶35    In my view, this was not the "correct advice" that *Padilla* and *Pozo* required plea counsel to provide.  As the majority correctly observes, those cases require plea counsel to advise their clients correctly as to what the *law* is.  Maj. op. ¶ 18.  Juarez's counsel, however, did not so advise Juarez.  Rather, he told Juarez, as a *factual* matter, what he thought the likely outcome of Juarez's plea would be.  I do not believe that this was sufficient under *Padilla* and *Pozo*.

¶36    Nor do I agree with the majority's apparent view that advising a defendant that deportation is "probable" or "likely" is the same thing as advising the defendant what the law is (here, that Juarez's plea rendered him automatically

6

deportable).  Telling a defendant that deportation is probable or likely does not tell him or her what the law is.  It provides, instead, a factual prediction as to the plea's likely outcome.  Moreover, advising a defendant that deportation is "probable" or "likely" tends to convey at least some possibility that deportation might not occur.  In my view, giving a defendant in a case like this such a false sense of hope is contrary to what *Padilla* and *Pozo* require because misadvising a defendant in this way interferes with his or her ability to make the voluntary, intelligent, and knowing waiver of rights that must accompany a guilty plea.

¶37    In contrast to advising a defendant that deportation is "probable" or "likely," advising defendants in cases like this that their pleas render them automatically deportable provides the defendants with the correct statement of the law that *Padilla* and *Pozo* mandate.  And so advising a client does not tend to convey false hope.  Indeed, if anything, it tends to suggest a general lack of discretion under the law.

¶38    For these reasons, I would conclude that plea counsel's advice in this case was deficient.  In my view, counsel's advice understated the consequences of Juarez's guilty plea, and in endorsing such deficient advice, I believe that the majority's opinion substantially weakens the important safeguards that both *Padilla* and *Pozo* have provided to noncitizen defendants who are considering entering guilty pleas.

7

## C. Prejudice

¶39 The question for me thus becomes whether plea counsel's deficient advice prejudiced Juarez. On the facts of this case, I cannot say that it did.

¶40 In the plea context, to establish the requisite prejudice, a defendant must show a reasonable probability that but for counsel's errors, the defendant would not have pleaded guilty but instead would have insisted on going to trial. *Hill v. Lockhart*, 474 U.S. 52, 59 (1985).

¶41 Here, the record establishes that in deciding whether to accept the plea offer, Juarez was principally focused on the offer's deportation consequences. The record further shows that Juarez knew that his counsel had tried to get a plea offer that would have avoided the possibility of deportation but that the prosecutor would not make such an offer. And the record reveals that Juarez knew that if he accepted the misdemeanor offer that was on the table, then he would probably be deported. Notwithstanding all of the foregoing, and although an immigration attorney had told him that the plea offer was unacceptable, Juarez chose to accept that offer, telling the providency court, "[W]e got to go with what . . . we can do now."

¶42 On these facts, I cannot say that but for plea counsel's deficient conduct, Juarez would probably have rejected the plea offer and would instead have proceeded to trial. Although plea counsel did not properly advise Juarez as to the

8

applicable law, as a factual matter, Juarez knew that his deportation was probable or likely if he pleaded guilty to a misdemeanor, and against immigration counsel's advice, he pleaded guilty anyway. In such circumstances, I do not believe that the record supports a finding that Juarez would have acted differently had he been told that his plea rendered him automatically deportable, such that his removal was practically inevitable.

¶43 Accordingly, I would conclude that Juarez has not established the requisite prejudice in this case.

## III. Conclusion

¶44 For these reasons, although I believe that plea counsel provided deficient advice regarding the immigration consequences of Juarez's guilty plea, I do not believe that Juarez has shown that he suffered any prejudice from that deficient advice.

¶45 Accordingly, like the majority, I would affirm the judgment below, but I would do so on different grounds. I therefore respectfully concur in the judgment only.

I am authorized to state that JUSTICE MÁRQUEZ joins in this concurrence in the judgment.

9